| | |
|---|---|
| BERT H. DEIXLER (SBN 070614)<br>(bdeixler@proskauer.com)<br>PROSKAUER ROSE LLP<br>2049 Century Park East, 32nd Floor<br>Los Angeles, CA 90067-3206<br>Telephone: (310) 557-2900<br>Facsimile: (310) 557-2193<br><br>LOUIS M. SOLOMON (*pro hac vice*)<br>(lsolomon@proskauer.com)<br>PROSKAUER ROSE LLP<br>1585 Broadway<br>New York, New York 10036-8299<br>Telephone: (212) 969-3000<br>Facsimile: (212) 969-2900<br><br>*Attorneys for Defendant and Counterclaim-Plaintiff Real Estate Alliance Ltd.* | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MOVE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>REAL ESTATE ALLIANCE LTD. and EQUIAS TECHNOLOGY DEVELOPMENT LLC,<br><br>    Defendants.<br><br>REAL ESTATE ALLIANCE LTD.,<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>MOVE, INC.<br><br>    Counterclaim-Defendant. | CASE NO. CV 07-02185-GHK (AJWx)<br><br>Hon. George H. King<br><br>**DECLARATION OF ALEXANDER KAPLAN IN OPPOSITION TO MOVE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[***REDACTED; UNREDACTED VERSION MANUALLY FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER***]<br><br>Date: October 27, 2008<br>Time: 9:30 a.m.<br><br>Action Filed: April 3, 2007<br>Counterclaims Filed: August 8, 2007<br>Trial Date: February 10, 2009 |

I, Alexander Kaplan, declare as follows:

1. I am an attorney associated with the law firm of Proskauer Rose LLP, counsel to defendant/counterclaim-plaintiff Real Estate Alliance, Ltd. ("REAL"). I am licensed to practice before the courts of the State of New York and have been admitted to this Court *pro hac vice*. I have personal knowledge of the facts stated below and, if called as a witness, would testify competently thereto.

**Discovery in this Action is Ongoing, and REAL Has Not Been Able to Obtain All Documents and Materials Essential to Its Opposition to MOVE's Motion**

2. Discovery in this action has barely just begun and is far from complete. Plaintiff/counterclaim-defendant Move, Inc. ("MOVE") and REAL have both served numerous requests for documents, multiple interrogatories, and subpoenas on third parties. Both sides have produced a significant number of documents; however, neither side has completed its document production, each continues to supplement its interrogatory responses, and no depositions have yet been noticed or have occurred. Third party discovery is barely underway, which REAL believes will be essential to its case.

3. Just less than three weeks ago, the parties to this action and the related NAR Action (CV 08-1657 (GHK)(MANx)) appeared before this Court to work out a plan under which the two cases could proceed in the most expedient and economical way possible and the Court so ordered a Case Management Stipulation on September 24, embodying the agreements contemplated and discussed at that hearing.

4. Notwithstanding the preliminary posture in which this case sits, MOVE filed this motion for summary judgment on August 18, 2007. MOVE filed its motion before it produced numerous documents critical to REAL's ability to oppose the motion and before any depositions were taken. Many of the critical documents MOVE had produced prior to August 18 had initially been produced in

1

a manner in which REAL's attorneys and computer science expert could not review them. There remain documents that REAL still does not have from MOVE that are also essential to opposing this motion. By filing its motion at this juncture, MOVE has forced REAL to review MOVE's documents and respond to its motion simultaneously, and to do so without the time REAL requires to review and understand all the documents that MOVE has produced.

### *Discovery re Operation of MOVE's Infringing Websites*

5. One aspect of MOVE's document production that remains incomplete is computer source code. Moreover, the source code that MOVE has produced in a format accessible to REAL's counsel and its computer science expert has been produced so recently that we have not been able to fully evaluate it. As the declaration of REAL's expert, Professor Dennis Shasha, makes clear, a thorough analysis of the MOVE source code is central to REAL's ability to prove that MOVE infringes the patents-in-suit, and thus oppose this motion.

6. REAL requested long ago production of source code pertaining to websites that MOVE operates (the "MOVE Websites"), which are at the heart of this case. (REAL's First Set of Requests for Production, January 11, 2008, Nos. 18-20 (seeking documents (broadly defined to include electronic data) concerning the design, creation, development, or implementation of any mapping system used on websites operated by MOVE[1]); REAL's Second Set of Requests for Production, May 22, 2008, Nos. 100, 106 (seeking "the source code for all versions of all MOVE Websites from January 1, 2001 to the present"; and "[a] representative, machine-readable, loadable and executable snapshot of the system running the MOVE Websites, including without limitation any source code, executable code

---

[1] ("REQUEST NO. 18: Any and all documents that reflect, refer or in any manner relate to the design of any mapping system used on websites operated by you; REQUEST NO. 19: Any and all documents that reflect, refer or in any manner relate to the creation and/or development of any mapping system used on websites operated by you; REQUEST NO. 20: Any and all documents that reflect, refer or in any manner relate to the implementation of any mapping system used on websites operated by you.")

2

...").) MOVE initially produced substantial quantities of source code on numerous CDs and hard drives in June 2008 in formats that were difficult for experts among my firm's IT staff to understand and analyze.

7. After spending substantial time reviewing the source code that MOVE produced, it did not appear to us that MOVE had produced the code related to the mapping features on the MOVE Websites, or the code that was running the current versions of the Websites. I advised MOVE's counsel of these deficiencies by email in mid-July. (*See* July 2008 email exchange at pp. 1, 3, attached hereto as Exhibit 1.)

8. Through a series of phone calls and email exchanges, I attempted to arrange a telephone discussion between certain pertinent parties on both sides so that we could ascertain whether MOVE had produced the source code that we had requested and required. I secured the availability of a member of my firm's IT staff and then repeatedly sought from MOVE's counsel – Wesley Achey of the law firm of Alston & Bird LLP – the availability of someone at MOVE who was familiar with the source code that MOVE had produced. (*See id.*)

9. Due to the unavailability of Mr. Achey's client, it was not until August 5 that we were able to have that discussion. (*See* August 5, 2008 email, attached hereto as Exhibit 2.) On that call, Mr. Achey explained what MOVE had produced in terms of source code and the different formats in which the code had been produced. With an understanding of the format in which MOVE had produced the current versions of the code, I told Mr. Achey that we would attempt to review the code but that we were unfamiliar with that format (Microsoft Team Foundation Server).

10. Review of the source code as produced in the Team Foundation Server format proved extremely burdensome and not viable, and I informed Mr. Achey that we needed to discuss an alternative format in which MOVE could produce the code to make it usable. (*See* email of August 12, 2008, attached hereto

as Exhibit Exhibit 3 at 1.) In that email, I explained to Mr. Achey that "it is mid-August and despite a tremendous amount of time and effort on our part searching for the code on the DVDs and hard drives that MOVE produced and attempting to restore those files, we are nowhere in our review of the current version(s) of the code." (*id.* at 2.)

11. On August 13, I discussed with Mr. Achey by telephone alternative formats in which MOVE could produce the code. I asked Mr. Achey if we could receive the code in text file format, which I understood from a member of my IT staff would be a format in which we would not have trouble accessing and reviewing the code.

12. On August 18, MOVE filed its motion for summary judgment.

13. By August 21, I had not hear back from Mr. Achey and sent him another email asking for MOVE to produce the code in text file format. (*See* Exhibit 3 at 1.)

14. The following day, on August 22, Mr. Achey offered that MOVE would set up the source code on a server so that we could access it in the Team Foundation Server format over the internet with a password. On August 29, we were able to access and review the source code through this means. However, the code was not searchable, which was important to our and our expert's ability to review and understand the code in order to respond to MOVE's summary judgment motion. I thus advised Mr. Achey that we still needed the code in text file format (which is searchable). Mr. Achey replied that the code was being converted into text format and would hopefully be produced the following week. (*See* August 28, 2008 email at 1, attached hereto as Exhibit 4.)

15. It was not until September 10 that I received the MOVE source code in text file format. (*See* letter from Mr. Achey dated September 9, 2008, attached hereto as Exhibit 5.)

16. Thus, only eleven days after MOVE filed its motion could REAL's counsel and Professor Shasha access the source code we needed to analyze in order to oppose this motion and, more specifically, to demonstrate that the MOVE Websites perform all of the steps of the Patents. (*See generally* Shasha Decl.) And, it was not until September 10 – more than three weeks *after* MOVE filed its motion – that REAL obtained the source code in searchable, text file format that allowed Professor Shasha to review the code with the speed necessary to submit his declaration.

17. MOVE still has not produced certain source code files that are integral to Professor Shasha's analysis and opinion that the MOVE Websites perform all of the steps of the Patents. (*See* Shasha Decl. ¶ 12.) I have asked MOVE's counsel to produce these files.

18. Additionally, we and Professor Shasha have not been able to thoroughly review all of the documents that MOVE has produced concerning the design and operation of the MOVE Websites. As a result, we cannot be certain that MOVE has produced all the documents REAL requires to establish infringement of the Patents. We are aware of one document that Professor Shasha believes is essential to his analysis that MOVE has not yet produced. (Shasha Decl. ¶ 5.) We specifically identified this document to MOVE's counsel on August 21 but have yet to receive a copy of it. (*See* August 21, 2008 letter from Alexander Kaplan, attached hereto as Exhibit 6.) MOVE's counsel's response, not sent until September 17, represented only that they would search for the document and produce it if they locate it and determine it to be responsive. (*See* September 17, 2008 letter from Mr. Achey, attached hereto as Exhibit 7.)

19. As a result of the foregoing, and the early stage of this action at which MOVE brings this motion and forces Professor Shasha to issue an opinion, Professor Shasha's accompanying declaration states that his conclusions at this point are necessarily preliminary as he has not yet had the opportunity to fully

5

review the source code, documents concerning the design of the MOVE Websites, or benefit from depositions of those who designed the source code and operate and maintain the MOVE Websites. (Shasha Decl. ¶ 5.)

20. REAL's ability to fully analyze MOVE's source code and prove that earlier versions of the MOVE Websites infringed the Patents ultimately may be compromised in part because of MOVE's wrongful destruction of the relevant information. REAL is aware that a magistrate judge in the Northern District of California in another patent infringement case against MOVE recommended monetary sanctions and an adverse inference against MOVE after finding that MOVE "recklessly allowed the destruction of some relevant source code" that ran earlier versions of the MOVE Websites, though was obligated to have preserved that code. *See Keithley v. Homestore.com, Inc.*, No. C-03-4447 SI (EDL) N.D. Cal., Order for Monetary Sanctions and Report and Recommendation for Adverse Inference Instruction to Remedy Discovery Misconduct, at 8. (The opinion and Order re Clarification are attached hereto as Exhibit 8.)

21. The magistrate judge found that MOVE had not "imposed a proper litigation hold in th[e] case," the result of which was that "prior versions of source code was destroyed." (*Id.* at 15.) The inventor of the Patents in this case, Mr. Tornetta, sent MOVE a letter notifying MOVE of potential infringement of the Patents in 1997. (*See* 1997 letter from Mark Tornetta to Richard Janssen, attached as Exhibit 9, and internal MOVE documents acknowledging that letter, attached as Exhibit 10.)

22. The magistrate judge in the *Keithley* litigation found that the testimony of MOVE's employees could not be relied upon to determine the exact time periods for which the destroyed code ran the websites. (*See* Ex. 8 at 18, 24.) It thus recommended, in addition to monetary sanctions, an adverse inference and a jury instruction as follows: "If Plaintiffs prove that Defendants infringed any claim of the [Plaintiff's] patent after [the event that caused the code to be

6

destroyed] by the operation of the www.realtor.com, www.homebuilder.com, www.homestore.com … websites, the jury shall infer that the same websites infringed the [Plaintiff's] patent from the date it was launched." (*Id.* at 24, 27.) These websites are three of the MOVE Websites that REAL alleges infringe the Patents in this case. Obviously, REAL does not have that code that MOVE destroyed and will never be able to get it. We are still exploring what impact that destruction has on REAL's ability to discover the necessary facts here regarding the operation of the MOVE Websites.

### *Discovery re REAL's Ability To Establish Direction or Control*

23. MOVE also has not produced all of the documents REAL has sought pertinent to the issue of "direction or control," which MOVE has made the central point of its motion. Many of the documents MOVE has produced were produced only within the last ten days.

24. If the Patents may be infringed only by two or more parties, as MOVE contends and REAL rejects, REAL intends to demonstrate that MOVE, directly or through a combination with the governing trade associations, defendants National Association of Realtors ("NAR") and National Association of Homebuilders ("NAHB"), directs or controls the other actors who also perform the steps of the Patents. (*See* REAL Opposition Brief § III.C.) REAL's argument is in significant part based on a network of contractual agreements between MOVE/NAR, MOVE/NAHB, and other members of the real estate industry for whom, and with whose cooperation, MOVE admittedly operates the MOVE Websites. (*Id.*)

25. REAL has sought these contract from MOVE since January 2008. (REAL's First Set of Requests for Production, Nos. 70-73,[2] and in correspondence

---

[2] "REQUEST NO. 70: Any and all documents that reflect, refer or in any manner relate to any contract or agreement between any real estate agent and you;
REQUEST NO. 71: Any and all documents that reflect, refer or in any manner relate to any contract or agreement between any real estate broker and you.;
REQUEST NO. 72: Any and all documents that reflect, refer or in any manner relate to any contract or agreement between any Multiple Listing Service and you;
REQUEST NO. 73: Any and all documents that reflect, refer or in any manner

7

and discussions between counsel for REAL and MOVE in April and May 2008.) MOVE either has not produced, or has just produced, many of those contracts. (*See* September 18, 2007 letter from Wesley Achey, at 3-4, attached as Exhibit 11.) For example, on September 18, MOVE produced its operating agreement with the National Association of Homebuilders ("NAHB"), which has employed MOVE to operate the Move.com website for the benefit of its members. (*See id.*; REAL Opp. Brief at 18.) On September 19, MOVE produced additional contracts it had not yet produced with the National Association of Realtors ("NAR"), which has employed MOVE to operate the Realtor.com website for the benefit of its members, and multiple form contracts with real estate brokers that provide real estate listings to MOVE. (*See* September 19, 2007 letter from Mr. Achey, attached as Exhibit 12; REAL Opp. Brief at 18.) On September 23, MOVE produced additional contracts with specific real estate brokers. (*See* September 23, 2007 letter from Mr. Achey, attached as Exhibit 13.) MOVE has not yet produced similar agreements with rental property owners, which REAL has requested, and is currently attempting to locate them. (*See* Ex. 11, at 4.)

    26.    Relatedly, REAL served a subpoena on NAR in the MOVE action on February 15, 2008. That subpoena sought, among other documents, documents useful if not essential to proving aspects of REAL's direction and control allegations. NAR stonewalled production for months and only this month delivered to REAL over 150,000 pages of documents in electronic format. By agreement with counsel for NAR (who is the same counsel that is representing MOVE in these actions), REAL has until January 10, 2009, to review those documents, thus underscoring the prematurity of MOVE's motion.

    27.    Also relatedly, as this Court was told during the conference of September 10, 2008, REAL requires discovery from the other defendants in these

---

relate to any contract or agreement between any real estate professional or trade association and you."

8

1 | cases on the critical direction and control allegations. Those defendants have
2 | stated that they will oppose REAL's discovery, and the Case Management
3 | Stipulation so ordered by the Court on September 24 details the procedures that
4 | REAL will take to get that discovery, which is also essential to permit REAL to
5 | respond to the MOVE motion.

**Document Production Generally**

28. REAL's ability to review MOVE's document production has also been slowed by difficulties REAL has had accessing and reading many documents MOVE has produced in native file format. (The parties agreed upon an Electronic Discovery Plan filed with the Court, which called for production of certain electronic discovery in native file format.) MOVE has had to reproduce, or is in the process of reproducing many such files. MOVE has not hesitated to correct its production, but the need to make corrections has delayed REAL's ability to review documents. We have had to determine what the problems with the files are with our IT staff, identify the problems to MOVE, and then await reproduction of the materials. (*See, e.g.*, Ex. 6; Ex. 7; July 2, 2008 email, attached hereto as Exhibit 14; July 10, 2008 email, attached hereto as Exhibit 15.)

29. REAL is not here asserting that MOVE is currently being uncooperative with respect to discovery and document production. Nonetheless, significant discovery is required in this action; it is ongoing and far from complete, and REAL needs to complete that discovery, any follow up discovery, the necessary third party discovery, and the depositions before it will be able to respond fully to MOVE's motion for summary judgment. MOVE has produced almost 300,000 pages of documents, plus a substantial amount of electronically stored information, including source code, databases, and log files. That vast scope of documents and electronic information that REAL must review and analyze makes clear that MOVE's mid-discovery summary judgment motion is premature and that, by having to oppose MOVE's motion at this stage with the

discovery discussed above either still outstanding or just produced, REAL has been severely prejudiced in its ability to oppose MOVE's motion.

*Depositions*

30. As noted earlier, REAL requires the depositions of those at MOVE and at third parties knowledgeable regarding the design of the MOVE Websites and source code running the websites.

31. REAL also requires the depositions of individuals at MOVE and the other entities with which MOVE has contracted on the issues pertaining to direction and control and the importance of the inclusion of mapping features on the MOVE Websites.

32. No depositions have yet been scheduled or taken, including of the MOVE employees that have submitted declarations in support of this motion.

**Documents Cited in REAL's Opposition Papers**

33. Available at the following link of the website of the United States Patent and Trademark Office is the record of assignment of the '576 Patent: <http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=4870576&pub=&asnr=&asnri=&asne=&asnei=&asns=>. This webpage is attached hereto as Exhibit 16.

34. Available at the following link of the website of the United States Patent and Trademark Office is the record of assignment of the '989 Patent: <http://assignments.uspto.gov/assignments/q?db=pat&qt=pat&reel=&frame=&pat=5032989&pub=&asnr=&asnri=&asne=&asnei=&asns=>. This webpage is attached hereto as Exhibit 17.

35. Attached hereto as Exhibit 18 is a true and correct copy of the

**REDACTED**

10

36. Attached hereto as Exhibit 19 is a true and correct copy of the March 25, 2008 order of the Honorable Thomas M. Golden staying the matter of *Real Estate Alliance, Ltd. v. Diane Sakisian, et al.*, No. 05-CC-3573 (E.D. Pa.).

37. Attached hereto as Exhibit 20 is a true and correct copy of REAL's Third Supplemental Response to MOVE's Interrogatory No. 8.

38. Attached hereto as Exhibit 21 is a true and correct copy of MOVE's Responses to REAL's First Set of Interrogatories.

39. Attached hereto as Exhibit 22 is a true and correct copy of relevant excerpts of the Appendix of the '576 Patent.

40. Attached hereto as Exhibit 23 is a true and correct copy of the **REDACTED**

41. Attached hereto as Exhibit 24 is a true and correct copy of the **REDACTED**

42. Attached hereto as Exhibit 25 is a true and correct copy of the **REDACTED**

43. Attached hereto as Exhibit 26 is a true and correct copy of the **REDACTED**

44. Attached hereto as Exhibit 27 is a true and correct copy of the **REDACTED**

45. Attached hereto as Exhibit 28 is a true and correct copy of the **REDACTED**

46. Attached hereto as Exhibit 29 is a true and correct copy of the relevant excerpt of the 2007 NAR Realtor Technology Survey.

47. Attached hereto as Exhibit 30 is a true and correct copy of the relevant excerpt of the National Association of Realtors' 2005 Annual Report.

48. Attached hereto as Exhibit 31 is a true and correct copy of the relevant excerpt of the Homestore.com, Inc. Form 10-Q, dated Sept. 30, 1999).

49. Attached hereto as Exhibit 32 is a true and correct copy of the April, 11, 2008 article titled "NAR and Industry Partners Agree on Syndication Standard for Distributing Real Estate Listing," printed from NAR's website, realtor.org.

50. Attached hereto as Exhibit 33 is a true and correct copy of the California Association of Realtors' "2007 Internet v. Traditional Buyer Survey."

51. Attached hereto as Exhibit 34 is a true and correct copy of the 1998 "ESRI GIS Solutions for Real Estate: Home Buyers Find Information, Maps Online."

52. Attached hereto as Exhibit 35 is a true and correct copy of the complaint filed by Mark Tornetta against Moore U.S.A., Inc. and Microsoft Corporation, dated December 2, 1998.

53. Attached hereto as Exhibit 36 is a true and correct copy of a letter from REAL addressed to Adrian Homes dated April 3, 2001.

54. Attached hereto as Exhibit 37 is a true and correct copy of a letter from Richard Mendenhall, former President of NAR, titled "NAR's Technology Policy Explained," dated April 25, 2001, and available at <http://realtytimes.com/printrtpages/20010425_policy.htm>.

55. Attached hereto as Exhibit 38 is a page from the Real Estate Transaction Standard ("RETS") website, rets.org/cms/faq.

56. Attached hereto as Exhibit 39 is a true and correct copy of a Form Broker Data Content Provider Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in New York, New York on September 29, 2008.

*Alexander Kaplan*
Alexander Kaplan

12