# EXHIBIT 1

# Venture Agreement
### Dated November 26, 2002

**Parties:**    Mark A. Tornetta –Inventor - ("Tornetta");

Lawrence A. Husick, Esq. - Lead Patent Attorney -("Husick");

B. Jay Bagdis – Investor – ("Bagdis");

Andrew K. Rooke – Investor – ("Rooke);

*Whereas,* Tornetta, of Plymouth Meeting, Pennsylvania has invented a business method for the searching and display of Real Estate information, and;

*Whereas,* Tornetta owns **US Patent 5,032,989 ("989")**, a valid business method patent entitled "Real Estate Search and Location System and Method" and;

*Whereas,* Husick has performed legal services related to obtaining and defending '989; and

*Whereas,* Bagdis has invested funds to assist Tornetta in developing the technology to exploit '989; and

*Whereas,* Rooke is willing to invest additional funds to defend the patent, issue licenses, and recover royalties;

*Now therefore, for and in consideration of the mutual promises, the parties hereby agree as follows:*

1.    The Parties will cause to be chartered a Delaware Corporation, a "C" corporation, to be called Real Estate Alliance Ltd., (hereinafter "the Company").

2.    Tornetta will assign an exclusive license for **US Patent 5,032,989** to the Company in exchange for the capital stock in the Company. Tornetta will become a Director and Chairman of the Company

3.    Husick will continue to perform services for the Company, in roles and at rates as described below. Husick will receive eight and one-half percent (8.5%) of the capital stock of the Company, and will remain as General Counsel.

4.    Bagdis will become Chief Executive Officer, and a Director of the Company and will receive seventeen percent (17%) of the capital stock of the Company.

BJB000682

## *Venture Agreement*
### *Dated November 26, 2002*
### *Page 2*

5.      Rooke will make a Capital contribution to the Company in the amount of up to Four Million Dollars and will receive fifteen percent (15%) of the capital stock of the Company.

6.      Rooke will become Chief Financial Officer, and a Director of the Company.

7.      The Company will seek strategic partners for licenses in specific industries or sectors.

8.      Licensees may sublicense within their respective industries or sectors.

9.      When necessary, the Company will initiate litigation to enforce its rights under the Patent(s).

10.     Rooke shall have the option to acquire an additional five percent (5%) of the capital stock of the Company under conditions as specified in a separate addendum to this agreement.


_____        11/26/02
Mark A. Tornetta                        Date

_____        26-NOV-02
Lawrence A. Husick                      Date

_____        11/26/02
B. Jay Bagdis                           Date

_____        11/26/02
Andrew K. Rooke                         Date

BJB000683

# EXHIBIT 2

# Real Estate Alliance Ltd.

## UNANIMOUS CONSENT IN LIEU OF
## MEETING OF DIRECTORS

**We, the undersigned,** being the Directors of Real Estate Alliance Ltd., incorporated under the laws of the State of Delaware. do hereby waive notice and consent in writing, to the adoption of the following resolutions to the end that each is adopted as valid corporate action as though each such resolution had been adopted at a formal meeting of the Board of Directors of the Corporation.

**Resolved,** That the form of By-Laws submitted for the regulation of the affairs of the corporation be adopted and inserted in the minute book immediately following the copy of the Certificate of Incorporation.

**Resolved,** That the following are designated to constitute the Officers of this Corporation, to hold office for the ensuing year and until successors are chosen and qualified:

| | |
|---|---|
| President: | Andrew K. Rooke |
| Secretary: | Mark Tornetta |
| Treasurer: | B. Jay Bagdis |

**Resolved,** That the Board of Directors be and it is hereby authorized to issue the capital stock of this Corporation to the full amount or number of shares authorized by the Articles of Incorporation, in such amounts and proportions as from time to time shall be determined by the Board, and to accept in full or in part payment thereof such property as the Board may determine shall be good and sufficient consideration and necessary for the business of this Corporation.

**Further Resolved,** that the capital stock of the corporation be distributed for good and valuable consideration, receipt of which is hereby acknowledged, in accordance with the terms of a certain Venture Agreement attached to this consent

**Resolved,** That the stock certificates of this corporation shall be in the form submitted.

Unanimous Consent In Lieu of First Meeting of Board of Directors

Page 1 of 3

R005406

**Resolved,** That the seal, an impression of which is herewith affixed, be adopted as the corporate seal of this corporation.

**Resolved,** That the Secretary is hereby authorized and directed to procure the proper corporate books, and the Treasurer be and is hereby authorized and directed to pay all fees and expenses incident to and necessary for the organization of the corporation.

**Resolved,** That full paid and non-assessable shares of the corporation be issued as follows:

|  |  |
|---|---|
| Mark A. Tornetta | 595 Shares |
| B. Jay Bagdis | 170 Shares |
| Lawrence A. Husick | 85 Shares |

And

**Further Resolved,** that Andrew K. Rooke shall receive up to 150 Shares upon completion of his funding commitment as outlined in the Venture Agreement.

**Further Resolved,** That the President and Secretary be and they are hereby authorized and directed to issue and deliver certificates of full paid and non-assessable shares of this corporation to the said Mark A. Tornetta, Lawrence A. Husick, and B. Jay Bagdis.

**Resolved,** That the officers of this corporation be authorized and directed to open a bank account in the name of the corporation, in accordance with a form of bank resolution attached to these minutes.

**Resolved,** That in compliance with the laws of the State of Delaware, this corporation have and continuously maintain a registered office within the State of Delaware, and have an agent at all times in charge thereof, upon which agent process against this corporation may be served, and that the books and records of the corporation shall be available for examination by any stockholder for any proper purpose as provided by law.

**Resolved,** That the proper officers of the corporation be and they are hereby authorized and directed on behalf of the corporation, and under its corporate seal, to make and file such certificate, report or other instrument as may be required by law to be filed in any state,

Unanimous Consent In Lieu of First Meeting of Board of Directors

territory, or dependency of the United States, or in any foreign country, in which said officers shall find it necessary or expedient to file the same to authorize the corporation to transact business in such state, territory, dependency or foreign country.

Dated:  December 15, 2002

Mark A. Tornetta
Secretary

Andrew K. Rooke

B. Jay Bagdis

# EXHIBIT 3

-

## Page 1

[1] 1

[1] IN THE UNITED DISTRICT COURT FOR
[2] THE EASTERN DISTRICT OF PENNSYLVANIA
[3] REAL ESTATE ALLIANCE,          )
[4] LTD., a Delaware          ) NO. 05-CV-3573 [5] Corporation,
[6] Plaintiff and Counter          ) [7] Defendant,          ) [8] vs-
)
[9] DIANE SARKISIAN, an          ) [10] Individual,          ) [11] Defendant and counter          ) [12] Plaintiff
[13] and          )
[14] VARIOUS JOHN AND JANE DOES, ) [15] Defendants.          ) [16]
Oral deposition of B. JAY BAGDIS, taken at [17] 210 North Jackson Street, Media, Pennsylvania, [18] on Tuesday, June 6, 2006, at 10:10 a.m., before [19] Dolores M. Horne, Shorthand reporter and Notary [20] Public, in and for the Commonwealth of [21] Pennsylvania.
[22] ESQUIRE DEPOSITION SERVICES [23] 1600 John F. Kennedy Boulevard [24] Philadelphia, Pennsylvania 19103

## Page 2

[1] APPEARANCES: •

[3] LIPTON, WEINBERGER & HUSICK [4] BY:  LAWRENCE A. HUSICK, ESQUIRE [5] P.O. Box 587 [6] Southeastern, Pennsylvania 19399 [7] (610) 296-8259 [8] Attorneys for the Plaintiffs [9] [10] [11] [12]

[13] PIPER, RUDNICK, GRAY, CARY [14] BY:  ANDREW NOBLE, ESQUIRE [15] STEVEN A. NASH, ESQUIRE [16] One Liberty Place [17] 1650 Market Street [18] Suite 4900 [19] Philadelphia, Pennsylvania 19103
[20] (215) 656-3305 [21] Attorneys for the Defendant [22] [23] [24]

## Page 3

[1] I N D E X

[2] WITNESS          EXAMINATION PAGE [3] B. JAY BAGDIS [4] [5] By: Mr. Noble          5 [6] By:  Mr. Husick 71 [7] E X H I B I T S [8] [9]
[10] NO.          DESCRIPTION PAGE [11] 1          Document          17 [12] 2          Document          18 [13] 3          Document          26 [14] 4          Document          34 [15] 5          Document          42 [16] 6          Document          43 [17] 7          Document          45 [18] 8          Document          53 [19] 9          Document          56 [20] 10          Document          64 [21] 11          Document          66 [22] 12          Document          70 [23] [24]

## Page 4

[1] DEPOSITION SUPPORT INDEX [2]
[3] Direction to Witness Not to Answer [4] Page   Line   Page   Line   Page   Line [5] [6] [7] [8] Request for Production of Documents [9] Page   Line   Page   Line   Page   Line [10] [11] [12] [13] Stipulations [14] Page   Line   Page   Line   Page   Line [15] [16] [17] [18] [19] Question Marked [20] Page   Line   Page   Line   Page   Line [21] [22] [23] [24]

## Page 5

[1] (By agreement of counsel, the sealing, [2] filing and certification are waived, and all [3] objections, except as to form of the question [4] are reserved until the time of trial.) • [6] B. JAY BAGDIS, after having been [7] first duly sworn, was examined and testified as [8] follows: [9] [10] 10 * * * [11] E X A M I N A T I O N [12] 12          * * * [13] [14]
[15] MR. HUSICK:  My name is Lawrence [16] Husick. I'm an attorney for the plaintiff [17] Real. I'm here defending Mr. Bagdis in the [18] deposition here today. As you know, Mr. Bagdis [19] is a practicing attorney, and at various times [20] has represented a number of organizations about [21] which I expect you will be asking questions. [22] Mr. Bagdis has represented [23] clients whom I have not represented, as well as [24] those whom I have. Therefore, at various times

## Page 6

[1] during this deposition I believe that Mr. [2] Bagdis may on behalf of his clients or former [3] clients assert attorney/client or attorney work [4] product or common interest privilege. I will [5] not do so for anyone who has not been my client [6] or is not now my client. We will attempt to [7] make that clear as the deposition proceeds. [8] Thank you.
[9] BY MR. NOBLE:
[10] Q: Hello, Mr. Bagdis.
[11] A: Yes.
[12] Q: Could you please state your full name [13] for the record?

## Page 7

[14] A: First initial B, middle name Jay, J A [15] Y, last name Bagdis, B A G D I S.
[16] Q: I'm going to go over a couple of rules [17] for a deposition just to start out here.  You [18] just took an oath to give your best testimony.  [19] Do you understand that oath?
[20] A: I do.
[21] Q: Do you understand that it's the same [22] as you would give as if you were in a court of [23] law?
[24] A: I do.

## Page 7

[1] Q: I'm going to break the deposition up [2] into a series of questions. The first set is [3] going to be covering your educational [4] background and then your work experience. Then [5] we're going to get into more substantive issues [6] after that. I'm going to ask questions. The [7] court reporter is going to take down the [8] questions, as you know, and your response. [9] Your counsel is going to have an opportunity to [10] object. Do you understand that?
[11] A: I do.
[12] Q: For the purposes of the transcript, [13] if you could try not to speak at the same time I'm [14] speaking and also not use nods of the head in [15] place of yes or no, that would be best. Can we [16] agree to that?
[17] A: Absolutely.
[18] Q: And to the extent that you don't [19] understand any of the questions or you need [20] questions repeated, you can ask the court [21] reporter to repeat the question. Do you [22] understand that?
[23] A: I do.
[24] Q: If you need any breaks to go to the

## Page 8

[1] restroom, you can do that. The only time it's [2] inappropriate to do that is when I'm in the [3] middle of a question or there's a question [4] pending. Do you understand that?
[5] A: I do.
[6] Q: And your testimony is going to be in a [7] booklet. It's going to be sent to you. You'll [8] have a chance to review it, and you can put [9] your comments into it at that time. Do you [10] understand?
[11] A: Yes.
[12] Q: Have you had any formal education [13] beyond high school?
[14] A: I have.

RLMV004495

[22] attorney. I'm in business practice. So I do [23] whatever is necessary to get the job, the [24] client, the business running. I would consider

## Page 15

[1] them all engagements in either the consulting [2] or the legal practice. I don't understand the [3] relevance of this, either.
[4] Q: So, do you live in the Philadelphia [5] area?
[6] A: I live in the suburbs.
[7] Q: Where in particular?
[8] A: Worcester Township.
[9] Q: And have you lived here for a long [10] time?
[11] A: Since 1974.
[12] Q: Have you had any conversations about [13] the current case with the current or former [14] principals of Real?
[15] A: What do you mean by principals of [16] Real?
[17] Q: Shareholders, there's principals, [18] officers of the company?
[19] A: Yes.
[20] Q: How many conversations have you had?
[21] A: I don't know. It's been several.
[22] Q: And have you had any conversation with [23] Real's counsel, specifically Lawrence Husick?
[24] A: Yes.

## Page 16

[1] Q: Lawrence Weinberger?
[2] A: Yes.
[3] Q: What was the most recent [4] conversation?
[5] A: I had breakfast with Mr. Husick this [6] morning.
[7] Q: You discussed the current case?
[8] MR. HUSICK: Objection. I [9] counsel the witness not to reveal the content [10] of any communication with an attorney. If you [11] can identify the information sought without [12] revealing attorney, client privileged [13] information, you may do so.
[14] THE WITNESS: He basically told [15] me to tell the truth, the whole truth. This is [16] a deposition and I'm here to answer questions.
[17] BY MR. NOBLE:
[18] Q: Did you reveal any documents in [19] preparation for this deposition?
[20] A: Not really.
[21] Q: So, no documents passed between you [22] and Real's counsel in

preparation?
[23] A: I think that anything that did would [24] be work product. But there weren't any

## Page 17

[1] documents.
[2] (Document marked Exhibit 1 for [3] identification.)
[4] BY MR. NOBLE:
[5] Q: This is defendant Diane Sarkisian's [6] first subpoena directed to Jay Bagdis. Have [7] you seen or reviewed this document before?
[8] A: Yes.
[9] Q: And have you discussed this document [10] with anyone?
[11] A: I discussed it with counsel.
[12] Q: Mr. Husick?
[13] A: Yes.
[14] Q: Are you the person involved with Real [15] who was most knowledgeable about Real's [16] corporate structure, including its formation [17] and the rights and obligations of the [18] shareholders?
[19] MR. HUSICK: Objection. Assumes [20] a fact not in evidence.
[21] THE WITNESS: I don't [22] understand the question.
[23] BY MR. NOBLE:
[24] Q: Well, I'm asking you generally when --

## Page 18

[1] as a person involved with Real, are you [2] knowledgeable about the corporate structure of [3] Real?
[4] MR. HUSICK: Again, objection. [5] Assumes a fact not in evidence.
[6] BY MR. NOBLE:
[7] Q: Have you been involved with Real?
[8] A: Yes.
[9] Q: And do you understand the corporate [10] structure of Real?
[11] A: It's a Delaware corporation.
[12] Q: And do you -- when was Real formed?
[13] A: I don't remember. It's of public [14] record, though.
[15] (Document marked Exhibit 2 for [16] identification.)
[17] BY MR. NOBLE:
[18] Q: This is Exhibit 2. This is a [19] certificate of incorporation for Real Estate [20] Alliance, Ltd. Were you an officer of Real at [21] the time of the formation of the company?
[22] A: I believe initially I was an officer. [23] I don't remember which officer.

[24] Q: And you don't remember which officer

## Page 19

[1] you were?
[2] A: No.
[3] Q: And do you remember any specific [4] duties that you performed at the time?
[5] A: As an officer I probably signed [6] checks, so I was probably the treasurer.
[7] Q: Do you know the reason behind forming [8] Real? What was the general purpose of the [9] company?
[10] A: To license the Tornetta patents.
[11] Q: Was Real formed as a successor entity [12] to RealPro?
[13] A: I think successor is a technical term. [14] It was formed as an independent entity.
[15] Q: Was there any difference in the [16] corporate mission between RealPro and Real? [17] You said that Real's mission was to license the [18] Tornetta patents. Was that the same corporate [19] mission --
[20] A: The objective has always been to [21] license the patents.
[22] Q: So the answer would be, yes, that [23] RealPro --
[24] A: RealPro also had certain hardware

## Page 20

[1] applications that were needed in order to [2] implement the patents back in the dark ages.
[3] Q: And were you involved in RealPro?
[4] A: Yes.
[5] Q: In what capacity were you involved in [6] RealPro?
[7] A: I formed the corporation, and I was [8] their general counsel.
[9] Q: Other than yourself, were there any [10] individuals who were involved in RealPro who [11] were also involved later in Real?
[12] A: Yes.
[13] Q: Who were those?
[14] A: Mark Tornetta obviously, myself, [15] I believe that's it.
[16] Q: And do you know what Mr. Tornetta's [17] position -- did he have a formal position in [18] RealPro?
[19] A: Yes. He was the chairman, president, [20] largest shareholder, chief programmer, [21] janitor.
[22] Q: And for Real his position is the [23] same?
[24] A: He's chairman and president. We have

# EXHIBIT 4

BERT H. DEIXLER (SBN 070614)
(bdeixler@proskauer.com)
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:    (310) 557-2900
Facsimile:     (310) 557-2193

LOUIS M. SOLOMON (*pro hac vice*)
(lsolomon@proskauer.com)
PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
Telephone:    (212) 969-3000
Facsimile:     (212) 969-2900

*Attorneys for Defendant and Counterclaim-*
*Plaintiff Real Estate Alliance Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOVE, INC., ET AL. <br><br> Plaintiffs, <br><br> v. <br><br> REAL ESTATE ALLIANCE LTD. and EQUIAS TECHNOLOGY DEVELOPMENT LLC, <br><br> Defendants. | Case No. CV 07-02185-GHK (AJWx) <br><br> Hon. George H. King <br><br><br><br> **SUPPLEMENTAL FED. R. CIV. P. 26(A)(1) DISCLOSURES** |
| REAL ESTATE ALLIANCE LTD., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> MOVE, INC., ET AL., <br><br> Counterclaim-Defendants. | Action Filed:         April 3, 2007 <br> Counterclaims Filed:  August 8, 2007 <br> 2d Am. Compl. Filed: Jan. 12, 2009 <br> Counterclaims Filed:  Feb. 11, 2009 <br> Trial Date:            To Be Set |

Under Rule 26 of the Federal Rules of Civil Procedure, defendant and counterclaim-plaintiff Real Estate Alliance Ltd. ("REAL"), by its attorneys, hereby makes the following supplemental disclosures. These supplemental disclosures reflect the current knowledge of REAL and its counsel, supersede and replace any prior disclosures under Rule 26, and are subject to, and made without waiving, REAL's right to assert any and all objections to competency, relevancy, materiality, privilege, work-product, use, or admissibility as evidence, for any purpose, of any of these disclosures, or of the subject matter of these disclosures, in these or any subsequent proceedings. REAL reserves the right to supplement, amend, correct, or otherwise modify these disclosures as investigation and discovery are conducted.

## I.   **Individuals Likely to Have Discoverable Information**

Under Rule 26(a)(1)(A), the following individuals are likely to have discoverable information that REAL may use to support its claims or defenses, unless solely for impeachment:

A.   <u>REAL</u>

The following individuals must be contacted through REAL's counsel:

| Name | Address/Phone | Subject(s) |
|------|---------------|------------|
| Andrew Rooke | c/o Proskauer Rose LLP<br>1585 Broadway<br>NY, NY 10036<br>(212) 969 3200 | Licensing and attempts at licensing the Patents-in-Suit; defenses to Plaintiffs' state law claims; prior litigations involving the Patents-in-Suit; damages; REAL's business organization and operations. |

1

B.   Primary Defendants

| Name | Address/Phone | Subject(s) |
|---|---|---|
| Current and former officers, directors, principals, employees, and representatives of Move, Inc. (including its predecessors-in-interest), including, but not limited to, Stephen Bove, Allan Dalton, Phil Dawley, Jack Dennison, Mike Ferro, Marty Frame, Robert Greenspan, Ricardo Herrera, Richard Janssen, Tracy Mahnken, Greg Pray, Thomas M. Stevens, and Stuart Wolf | 30700 Russell Ranch Road Westlake Village, CA 91362 (805) 557-2300 | Defenses to allegations of infringement, reasonable royalties, and willfulness damages; state law claims alleged against REAL; Move's business organization and operations. |
| Current and former officers, directors, principals, employees, and | 1201 15th Street, NW Washington, DC 20005 (202) 266-8200 | Defenses to allegations of infringement, reasonable royalties, and willfulness damages; state law claims |

2

| | | |
|---|---|---|
| representatives of National Association of Home Builders, including, but not limited to, Joseph Barney, Brett Diggs, and Deborah Malone | | alleged against REAL, NAHB's business organization and operations. |
| Current and former officers, directors, principals, employees, and representatives of National Association of Realtors, including, but not limited to, Lorna Bernstein, Pat V. Combs, Keith Garner, Bob Goldberg, Laurie Janik, Tim Kline, Mark Lesswing, Michael Long, and Michael Thiel | 430 N. Michigan Avenue Chicago, IL 60611 (800) 874-6500 | Defenses to allegations of infringement, reasonable royalties, and willfulness damages; state law claims alleged against REAL; NAR's business organization and operations. |

3

C.     Other Parties

| Name | Address/Phone | Subject(s) |
|------|---------------|------------|
| James Ader | Unknown | Capabilities and limitations of MIDAS software. |
| B. Jay Bagdis | c/o Proskauer Rose LLP 1585 Broadway NY, NY 10036 (212) 969 3200 | Workplace software and Times Herald advertisement; Synermation agreement; REAL's business organization and operations. |
| Current and former officers, directors, principals, employees, and representatives of ESRI | 380 New York Street Redlands, CA  92373-8100 (909) 793-2853 | Capabilities and limitations of mapping software; infringement of Patents-in-Suit; damages. |
| Current and former officers, directors, principals, employees, and representatives of Microsoft Corp. | One Microsoft Way Redmond, WA 98052-6399 (425) 882-8080 | Capabilities and limitations of mapping software; infringement of Patents-in-Suit; damages. |
| John Haller | Unknown | Capabilities and limitations of MIDAS software. |
| Custodian, The Historical Society of | 1654 DeKalb Street Norristown, PA 19401 | Workplace Times Herald advertisement. |

4

# EXHIBIT 5

## Page 1

[1] 1
[1] IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA [2]
REAL ESTATE ALLIANCE, LTD.:
CIVIL ACTION [3] Plaintiff        :
[4] 4            : • vs.
: [5] 5          :
DIANE SARKISIAN and     : [6] various
JOHN and JANE    :
DOES,         : [7] Defendants
: NO. 05-3573 [8]
[9] HIGHLY CONFIDENTIAL [10] May 18, 2006 [11] • Videotaped Oral Deposition [12] of MARK A. TORNETTA, held in the law • offices of Lipton, Weinberger & Husick, [13] 201 North Jackson Street, Media, • Pennsylvania, beginning at approximately [14] 10:00 a.m., before Ann V. Kaufmann, a • Registered Professional Reporter, [15] Certified Realtime Reporter, Approved • Reporter of the U.S. District Court, and [16] a Notary Public of the Commonwealth of • Pennsylvania. [17]
[18] 18       ------       [19] [20] [21]
[22] ESQUIRE DEPOSITION SERVICES [1600] John F. Kennedy Boulevard [23] Four Penn Center, 12th Floor [19103] Philadelphia, Pennsylvania 19103 [24] (215) 988-9191
ESQUIRE DEPOSITION SERVICES

## Page 2

[1] APPEARANCES:
[2] LIPTON, WEINBERGER & HUSICK LAWRENCE A. HUSICK, ESQUIRE [3] lawrence@LawHusick.com [1617] Sorrell Road [4] Malvern, PA 19355 [610] (610)-296-8259 [5] Attorneys for Plaintiff
[6] DLA PIPER RUDNICK GRAY CARY US, LLP
DARIUS C. GAMBINO, ESQUIRE [7] darius.gambino@dlapiper.com
STEVEN NASH, ESQUIRE [8] steven.nash@dlapiper.com
ANDREW NOBLE, ESQUIRE [9] andrew.noble@dlapiper.com [1650] Market Street, [10] One Liberty Place [4900] Suite 4900 [11] Philadelphia, PA 19103 [215] (215) 656-3303 [12] Counsel for Defendants [13] O'CONNOR, MORSS & O'CONNOR, P.C.
MARK P. DUGAN, ESQUIRE, P.C. [14] mpd@ocomo.com [15] Elizabeth, NJ

## Page 3

[1] EXAMINATION INDEX [2]
MARK A. TORNETTA •
[9] BY MR. GAMBINO . . . . . . . . . . 9
[4] BY MR. NASH . . . . . . . . . . . . 304
[328] BY MR. GAMBINO . . . . . . . . 328
[5] BY MR. HUSICK . . . . . . . . . 337
[6] EXHIBIT INDEX
[7] MAR • Tornetta [8]
[1] Subpoena, 3/30/06, with     23 [9] attachment [10] 2    Notice of Deposition, 24 [3] 16/06 [11] [3] U.S. Patent 5,032,989     31 [12] [4] Amendment from the file     32 [13] history of the '989 patent [14] 5     U.S. Patent 4,870,576     34 [15] 6     Certificate of 72 • Incorporation for Real [16] Estate Alliance, Ltd [17] 7     Unanimous Consent in Lieu    73 • of Meeting of Directors of [18] Real Estate Alliance, Ltd. [19] 8     Corporate records of Real    77 • Estate Alliance, Ltd. [20] 12/11/02 [21] 9 Letter, 6/1/05, to     94 • Sarkasian from Husick [22]    [10] Screen shot of 106 [23] pahomesales.com [24]
ESQUIRE DEPOSITION SERVICES

## Page 4

[1] EXHIBITS (Continued) [2] Tornetta MAR [3] 11    Inventor's notebook, Bates 129 [6952] Nos. REAL 006952 through [4] REAL 007001 [5] 12    MapInfo News, Spring 1989,    150 • Special Issue [6] [13] Company overview,     156 [7] Navigational Technologies [3] Incorporated, 3/15/86 [8] [14] Document entitled "Cowen    164 [9] Presentation," 4/11/86 [10] 15    Navigational Technologies,    169 • Incorporated, memo, June [11] 1986 [12] 16    Letter, 6/18/86, to Tom    180 • from Dressel [13] [17] Document entitled "Albany 186 [14] and Rensselaer County Board • of Realtors User Group [15] Meeting by Navigational [7] Technologies," 7/14/86 [16] [18] Letter, 7/15/86, to Tom    189 [17] from Dressel [18] 19    Letter, 7/25/86, to Valerie    189 • from Dressel [19] [20] Document entitled "MIDAS

## Page 5

[1] EXHIBITS (Continued) [2] Tornetta MAR [3] 23    Memo from Navigational 206 • Technologies [4] [24] MapInfo Corporation     208 [5] article, second quarter [1988] [6] [25] Letter, 5/5/04, to Friedman    212 [7] from Hoff [8] 26 Letter to Tornetta from    216 • Rensselaer University [9] [27] Presentation entitled "Meet    220 [10] Our Golden Retriever" [11] 28    Document entitled     230 • Workplace Sample Search [12] Summaries" [13] 29    Times Herald newspaper    235 • article, "Computer Software [14] Finds the Right Spot" [4] 22/88 [15] [30] Letter, to Adrian from    256 [16] Tornetta, 4/3/01 [17] 31    Letter, to Corcoran, Jr.,    264 [7] from Tornetta, 7/27/00 [18]   [32] Letter, 8/15/00, to 265 [19] Tornetta from Mundy [20] 33 Letter, 7/22/02, to Dasberg    268 • from Tornetta [21]  [34] 23 letters 270 [22]  [35] E-mail, 9/22/00, to 274 [23] Tornetta from Shaftal [24]
ESQUIRE DEPOSITION SERVICES

## Page 6

[1] EXHIBITS (Continued) [2] Tornetta MAR [3] 36    Letter, 6/16/05, to Rooke 284 • from Hayes, with attachment [4] [37] Letter, 8/10/00, to     287 [5] Wadsworth from Tornetta, • with attachment • [38] Letter, 2/19/04, to Roberts    289 [7] from Rooke [8] 39 Letter, 11/2/04, to     291 • Costello from Tornetta [9]    [40] Series of letters to 295 [10] various real estate agents • from Husick [11]
[41] CD-ROM entitled "Files    304 [12] from Tornetta Hard Drive, [20060512] [13] [14] [15] [16] [17] [18] [19] [20] [21] [22] [23] [24]
ESQUIRE DEPOSITION SERVICES

## Page 7

[1] DEPOSITION SUPPORT INDEX [2]
[3] DIRECTION TO WITNESS NOT TO ANSWER [4] Page 112   Line 16 [5] Page 112   Line 23 [6]
[7] REQUEST FOR PRODUCTION OF [8] INFORMATION/DOCUMENTS
[9] (None) [10]

Page 1 to Page 7

- 13-

RLMV004439

[6] THE VIDEOGRAPHER: This [7] begins Tape 2 of this videotape [8] deposition. The time is 1:31. We're [9] back on the record.
[10] BY MR. GAMBINO:
[11] Q: Before the break we were [12] talking about the various suits that you [13] personally instituted against Microsoft, [14] Moore, and MapQuest. Do you recall [15] that?
[16] A: Yes.
[17] Q: Did you retain any [18] documents related to any of these suits?
[19] A: Yes.
[20] Q: And do you know if those [21] documents have been produced in this [22] litigation?
[23] A: Yes.
[24] Q: All of them?
ESQUIRE DEPOSITION SERVICES

## Page 124

Highly Confidential - Mark A. Tornetta
[1] A: The ones that I had.
[2] Q: Okay. What is REALPRO?
[3] A: It was a company.
[4] Q: Okay. And was it [5] incorporated?
[6] A: Yes.
[7] Q: Do you know in what state?
[8] A: There was a REALPRO, [9] Incorporated, in Pennsylvania and one in [10] Delaware.
[11] Q: And were you affiliated [12] with either one of them?
[13] A: Yes.
[14] Q: Were you affiliated with [15] both of them?
[16] A: Yes.
[17] Q: When was that company [18] formed?
[19] A: I'm not sure.
[20] Q: Did REALPRO ever own either [21] of the '576 or '989 patents?
[22] A: Which REALPRO?
[23] Q: The one -- well, let's talk [24] about the Pennsylvania one first.
ESQUIRE DEPOSITION SERVICES

## Page 125

Highly Confidential - Mark A. Tornetta
[1] A: Okay.
[2] Q: Did the Pennsylvania [3] REALPRO ever own either of the patents [4] in suit?
[5] A: I think so.
[6] Q: How about the Delaware one?
[7] A: Yes.
[8] Q: Okay. Did they own them at [9] the same time?

[10] A: I don't think so.
[11] Q: Okay. Why were there two [12] separate corporations, one in [13] Pennsylvania and one in Delaware?
[14] A: We switched to Delaware.
[15] Q: For tax purposes?
[16] A: I don't remember.
[17] Q: Do you recall about how [18] long each of those corporations were in [19] existence in number of years or months?
[20] A: No.
[21] Q: Did you hold any positions [22] in either the REALPRO of Pennsylvania or [23] REALPRO Delaware companies?
[24] A: I think I was president of
ESQUIRE DEPOSITION SERVICES

## Page 126

Highly Confidential - Mark A. Tornetta
[1] both companies.
[2] Q: Okay. Were you in charge [3] of any corporate documents as you were [4] with REAL?
[5] A: I don't remember.
[6] Q: Do you have any documents [7] in your possession relating to either [8] the REALPRO Pennsylvania entity or the [9] REALPRO Delaware entity?
[10] A: I don't know.
[11] Q: Have you searched for them?
[12] A: Yes.
[13] Q: And you couldn't find any?
[14] A: I don't know. I don't [15] remember.
[16] Q: Are you aware of any [17] computerized mapping systems that [18] existed prior to April 24, 1989?
[19] A: Yes.
[20] Q: Which ones?
[21] A: I think there's MapInfo.
[22] Q: MapInfo?
[23] A: Yes.
[24] Q: They had a computer mapping
ESQUIRE DEPOSITION SERVICES

## Page 127

Highly Confidential - Mark A. Tornetta
[1] system that existed prior to April 24, [2] 1989?
[3] A: I think so.
[4] Q: And was that system around [5] when you filed for your first patent [6] application for the '576 patent?
[7] A: I don't know.
[8] Q: Are you aware of any other [9] computerized mapping systems that [10] existed prior to April 24, 1989?

[11] A: To the best of my knowledge [12] I do not know.
[13] Q: Okay. How about prior to [14] March 19, 1986; are you aware of any [15] computerized mapping systems that [16] existed before that period?
[17] A: No.
[18] Q: Is it your contention that [19] you invented a computerized mapping [20] system in 1986 when you filed your '576 [21] patent?
[22] A: No.
[23] Q: What is it that you contend [24] you invented within that patent?
ESQUIRE DEPOSITION SERVICES

## Page 128

Highly Confidential - Mark A. Tornetta
[1] A: A real estate search and [2] location system and method.
[3] Q: Okay. But there were [4] mapping systems that existed that didn't [5] allow you to search for real estate [6] properties before that; correct?
[7] A: I don't -- ask the question [8] again, please.
[9] Q: There was mapping software [10] that existed prior to your filing of the [11] 576 patent in March of 1986 that [12] allowed mapping but did not allow [13] searching for properties within maps; is [14] that correct?
[15] A: I don't know.
[16] Q: Are you aware of a specific [17] product at MapInfo that was available [18] prior to April 24, 1989, that allowed [19] for computerized mapping?
[20] A: Yes.
[21] Q: What was that product [22] called?
[23] A: MIDAS.
[24] Q: Were there different
ESQUIRE DEPOSITION SERVICES

## Page 129

Highly Confidential - Mark A. Tornetta
[1] versions of MIDAS?
[2] A: I think so.
[3] Q: And when did you first [4] become familiar with the MIDAS program? [5] You can give me the year, if you [6] recall.
[7] A: I don't remember.
[8] Q: But it was prior to 1989?
[9] A: No.
[10] Q: So you found out about it [11] after April 24, 1989; but when you found [12] out about it, you realized that it was [13] in existence prior to April of 1989; is [14] that correct?

**Page 123 to Page 129**

- 14-

RLMV004458

you [15] assume that you didn't have a lawyer [16] involved at that point?
[17] A: I kind of remember we had [18] engaged Dilworth already --
[19] Q: Okay.
[20] A: REAL had, that is.
[21] Q: So do you remember whether [22] Dilworth put you in contact with [23] Rensselaer or whether you contacted them [24] yourself?
ESQUIRE DEPOSITION SERVICES

### Page 220

Highly Confidential - Mark A. Tornetta
[1] A: I contacted them myself, I [2] think.
[3] Q: Okay. And you came across [4] them by searching on the Internet?
[5] A: Yes.
[6] Q: Okay. And you were [7] searching because you were trying to [8] determine the validity of the '989 and [9] '576 patents?
[10] A: That's correct.
[11] Q: Okay. And other than [12] what's discussed in this letter, did [13] Dr. Abetti -- I'm sorry -- Professor [14] Abetti tell you anything about the early [15] developments at MapInfo?
[16] A: He said that -- I don't [17] really remember what he said.
[18] Q: Okay. Now, did you contact [19] him prior to ever being contacted by [20] MapInfo with regard to the covenant not [21] to sue?
[22] A: I don't remember.
[23] Q: Okay.
[24] (Below-described document
ESQUIRE DEPOSITION SERVICES

### Page 221

Highly Confidential - Mark A. Tornetta
[1] marked Tornetta Exhibit 27.)
[2] BY MR. GAMBINO:
[3] Q: I have asked the court [4] reporter to mark as Exhibit 27 a [5] presentation entitled "Meet Our Golden [6] Retriever" talking about The WORKPLACE [7] Network. If you could take a look at [8] that and let me know if you have ever [9] seen that before.
[10] A: I have.
[11] Q: What is this document [12] describing?
[13] A: It's a flier from a [14] licensee of our patents.
[15] Q: A licensee?
[16] A: Yes.
[17] Q: And who was that licensee?

[18] A: Synermation.
[19] Q: And if you look on the [20] second page at the bottom, it gives an [21] address for The WORKPLACE Network as [22] 1536 DeKalb Pike. Do you see that?
[23] A: Yes.
[24] Q: Is that the address you
ESQUIRE DEPOSITION SERVICES

### Page 222

Highly Confidential - Mark A. Tornetta
[1] gave me previously for REAL's [2] offices?
[2] A: No.
[3] Q: What was that address that [4] you gave me previously?
[5] A: 1200 DeKalb Pike, Center [6] Square.
[7] Q: Okay. And is this location [8] the location of Synermation?
[9] A: I don't remember.
[10] Q: So who is The WORKPLACE [11] Network? Is that Synermation?
[12] A: I don't remember. I think [13] it was owned by Synermation.
[14] Q: And you licensed -- I'm [15] sorry -- REAL licensed the '989 and '576 [16] patents to Synermation?
[17] A: No.
[18] Q: Did they only license the [19] '989 patent to Synermation?
[20] A: Well, the '989 patent [21] didn't issue until, you know, '91. And [22] this thing is dated, isn't it, '88?
[23] Q: Okay. Yes, I believe it is [24] dated 1988.
ESQUIRE DEPOSITION SERVICES

### Page 223

Highly Confidential - Mark A. Tornetta
[1] A: Right.
[2] Q: Okay.
[3] A: So I don't -- we didn't [4] license '989 to them. And I got a -- I [5] think we just licensed the application [6] to Synermation, the '576 application.
[7] Q: Okay.
[8] A: Because there was no '576, [9] so we licensed the application.
[10] Q: So did you have software [11] that you licensed to them?
[12] A: I licensed the patent to [13] them, the patent application to them.
[14] Q: Okay. For '576.
[15] A: Yes.
[16] Q: So how did they actually [17] get the thing to work? Did they write [18] software to make it work or how did that

[19] happen?
[20] A: No, they didn't write the [21] software.
[22] Q: Who did?
[23] A: I did.
[24] Q: Okay. So did you give them
ESQUIRE DEPOSITION SERVICES

### Page 224

Highly Confidential - Mark A. Tornetta
[1] a copy of the software as part of this [2] deal?
[3] A: I don't remember the [4] details of the license; it was a long [5] time ago.
[6] Q: Okay.
[7] A: But they used our software.
[8] Q: So the -- and the second [9] page of this document where it says "How [10] Do I Use WORKPLACE?" and it says [11] Running on your PC, the WORKPLACE [12] software displays," that's what I'm [13] talking about. Who wrote the WORKPLACE [14] software?
[15] A: I did.
[16] Q: Okay. And that software [17] was written in 1988 or earlier?
[18] A: Earlier.
[19] Q: Do you recall what year [20] that was written?
[21] A: I don't.
[22] Q: But it was prior to 1988?
[23] A: Yes.
[24] Q: So it says using this
ESQUIRE DEPOSITION SERVICES

### Page 225

Highly Confidential - Mark A. Tornetta
[1] WORKPLACE software, you can select an [2] area and there can be landmarks within [3] that area and then you can zoom in. [4] And then in the next [5] paragraph it says superimposed on this [6] map is a series of 'points,' each of [7] which represents at least one property [8] in the database. Do you see that?
[9] A: Where is that?
[10] Q: This would be paragraph -- [11] the second and third paragraphs in "How [12] Do I Use WORKPLACE?"
[13] A: Okay.
[14] Q: So the WORKPLACE software [15] allowed you to display points which [16] represented real estate properties, as [17] we talked about with regard to the [18] '989 patent?
[19] A: Could you repeat that, [20] please?
[21] Q: The WORKPLACE software [22] allowed a user to present a series or a [23]

**Page 219 to Page 225**

- 15-

# EXHIBIT 6

RPR-011

## ASSIGNMENT

WHEREAS, I, Mark Anthony Tornetta, hereinafter
referred to as "ASSIGNOR," have made an invention entitled
REAL ESTATE SEARCH AND LOCATION SYSTEM AND METHOD for which
on the date set forth below, the ASSIGNOR executed an appli-
cation for United States Letters Patent;

WHEREAS, REALPRO, Ltd., a corporation organized
and existing under and by virtue of the laws of Delaware
and engaged in business at 307 Anthony Drive, Plymouth
Meeting, Pennsylvania, 19462, hereinafter referred to as
the "ASSIGNEE," is desirous of acquiring the entire right,
title and interest in and to said invention, said applica-
tion and all Letters Patent which may be issued for said
invention;

NOW, THEREFORE, in consideration of One Dollar
($1.00) and of other good and valuable consideration, re-
ceipt of which is hereby acknowledged, the undersigned,
intending to be legally bound, does hereby sell, assign and
transfer to the ASSIGNEE the ASSIGNOR'S entire right, title
and interest, for the United States of America, its terri-
tories and possessions, and for all foreign countries, in
said invention, including said patent application, all divi-
sions and continuations thereof, all rights to claim prior-
ity based thereon, all rights to file foreign applications
on said invention, and all letters patent and reissues
thereof, issuing for said invention in the United States of
America and in any and all foreign countries.

It is agreed that ASSIGNOR shall be legally bound,
upon request and at the expense of the ASSIGNEE or its
successors or assigns or a legal representative thereof, to
supply all information and evidence of which the undersigned

R003593

RPR-011                    -2-

has knowledge or possession, relating to the making and practice of said invention, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent the invention in the United States of America and foreign countries in the name of the assignee and to execute all instruments proper to carry out the intent of this instrument.

If ASSIGNOR includes more than one person, these obligations shall apply to those persons both individually and collectively.

ASSIGNOR hereby covenants that no assignment, sale, agreement or encumbrance has been or will be made or entered into which would conflict with this assignment.

ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue any and all such United States Letters Patent to ASSIGNEE, its successors and assigns, as the owner of all right, title and interest therein.

RECORDED
PATENT & TRADEMARK OFFICE

JUN 12 89

ASSIGNOR:

_Donald J. Quigg_
COMMISSIONER OF PATENTS
AND TRADEMARKS OFFICE

Mark Anthony Tornetta

Date: 6/4/8⁻

Where signed:

MAT
2/4/90

R003594

# EXHIBIT 7

## LICENSE AGREEMENT

AGREEMENT made this 15th day of Jan_____,
198 8 by and between:

REALPRO Ltd., a Delaware corporation
725 Market Street
Wilmington, Delaware 19801
(hereinafter "REALPRO")

and

SYNERMATION, INC., a Delaware_____ corporation
725 Market Street
Wilmington, Delaware 19801
(hereinafter "SYNERMATION")

## WITNESSETH

WHEREAS, MARK A. TORNETTA (hereinafter "TORNETTA")
has developed a data processing system for the location of
real estate properties for purchase, lease or rent through
the use of an interactive graphical locator interface for
developing geographical area indications which is the
subject of U.S. patent application Serial No. 841,515 filed
March 19, 1986 and entitled "Real Estate Search and Location
System and Method";



REALPRO 000064

- 18-

-2-

WHEREAS, TORNETTA has assigned or will assign, to the extent that he has not done so, all of his right, title and interest in said data processing system to REALPRO;

WHEREAS, SYNERMATION desires to exploit commercially said data processing system;

NOW THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

ARTICLE I - <u>Definitions</u>

As used herein:

1.1 "LICENSED SOFTWARE" shall mean the computer program and database products and associated user documentation described in Schedule A attached hereto in their current or escrowed form and as they may from time to time be amended.

1.2 "LICENSED HARDWARE" shall mean equipment, accessories, supplies, components, software and the like first sold or leased by SYNERMATION specifically for use with the LICENSED SOFTWARE.

1.3 "LICENSED SYSTEMS" shall mean systems composed of the LICENSED SOFTWARE and the LICENSED HARDWARE.



REALPRO 000065

-3-

1.4 "LICENSED COPYRIGHTS" shall mean the copyrights to the LICENSED SOFTWARE and derivative works of the LICENSED SOFTWARE.

1.5 "LICENSED PATENTS" shall mean U.S. Patent application Serial No. 841,515 filed March 19, 1986 and entitled "Real Estate Search and Location System and Method" and all divisional, continuation, continuation-in-part and substitute patent applications thereof, all Letters Patent issuing from said U.S. patent applications, and all reissues of said Letters Patent.

1.6 "LICENSED SERVICES" shall mean the services and benefits included in the sale or lease of LICENSED SOFTWARE, LICENSED HARDWARE and LICENSED SYSTEMS, such as searches performed, listing premiums, advertising, consulting fees, franchises, and software maintenance.

1.7 "TECHNICAL INFORMATION" shall mean system overview, flowcharts and executable object code in machine-readable format in the possession of REALPRO at any time during the term of this Agreement relating to the manufacture, use and testing of: (1) machine-readable copies of the LICENSED SOFTWARE; (2) LICENSED HARDWARE, (3) LICENSED SYSTEMS and (4) LICENSED SERVICES.



REALPRO 000066

# EXHIBIT 8



# MEET OUR GOLDEN RETRIEVER

(the one on the LEFT)

**RELIABLE,** owner **FRIENDLY** and **STATE OF THE ART**
Real Estate **LOCATOR** and **DATA RETRIEVAL SYSTEM.**
A *NEW* champion for anyone who wants quick,
easy and timely Commercial or Industrial
realty information.

## WORKPLACE ™

BGDS000001

*fetch us by phoning*
**(215) 272-7000**

® copyrighted 1986
WORKPLACE OF AMERICA, INC

## Introducing...



# The WORKPLACE Network

**In the beginning,** there was commercial real estate information. But, that information was only as good as your ability to use it. There were properties, brokers, agents, listings, co-ops, MLS books, brochures, flyers, leaflets, and confusion. There was no simple, single source to sort it out.

**NOW,** there is **the WORKPLACE Network** - bringing you a complete overview of the real estate market - by specific location - with property information - sorted by size and price - all formatted for easy analysis and comparison.

WORKPLACE provides instant, automated, computerized retrieval of information about the commercial real estate market in metropolitan areas. An up-to-the-minute overview that is user friendly, available at your own Personal Computer (PC), or through any of the many authorized WORKPLACE sites located throughout the country.

A new concept in information management, presentation, and delivery - WORKPLACE caters specifically to the needs of the commercial real estate market - realtors, developers, property managers, businesspeople, appraisers, and investors.

In its simplest form, WORKPLACE joins together the various pieces of the commercial real estate puzzle - providing a clearinghouse for information needed by those in the market for commercial real estate and a ready source to those who are looking for new spaces or for space to expand; for developers looking for new markets; for businesses interested in major metropolitan areas; for appraisers seeking comparables; for market researchers seeking price comparisons; and for investors seeking new opportunities.

## HOW DO I USE WORKPLACE?

Running on your PC, the WORKPLACE software displays a map of the United States. You can then select a metropolitan area, (for example, the City of Philadelphia and the surrounding counties in Pennsylvania and New Jersey) from a menu or by pointing to the city on your PC's screen.

Depending on the size of your selected area, there are a series of landmarks to help you define your area of interest. For example, counties contain municipal reference points for areas of particular interest. The view port can be 'zoomed down' to a small, precise area, allowing easy definition of your 'target area'.

Superimposed on this map is a series of 'points', each of which represents at least one property in the WORKPLACE data base. By setting broad geographic, price, and size ranges, you can get an immediate 'overview' of the entire metropolitan commercial rental market. By setting a narrow geographic range, you can see every interesting site in a small area. The price and size ranges operate as 'filters' to allow you to select only those properties that meet your specific needs, and help you concentrate on your specific objective.

## HOW DOES WORKPLACE WORK?

WORKPLACE allows you to 'point' at a specific location on the national map to select available properties in a Metropolitan Area; you can set a price range ($/sq. ft) and a size range (100-10,000,000 sq. ft); then zoom the map down to the detail; and select the properties of interest to you.

Your inquiry is formulated from this map display and communicated to the central data bank using our proprietary computer program.

When your request is received, the WORKPLACE Computer sorts through the thousands of properties for which information is maintained. The result is telecommunicated to your computer immediately. A SUMMARY lists up to 48 properties which meet your defined parameters for LOCATION, SIZE, and PRICE.

If you want additional information, a CUSTOM SEARCH report is processed off-line, assembled with other sections containing additional property details and vendor information, and shipped to you within two business days.

If you check the NEWS, you can have immediate on-line access to the latest information about the market from our clearinghouse for 'hot' information - new listings, properties for sale, rumors, gossip, and special promotions.

## WHAT DO I NEED?

The WORKPLACE Software runs on an IBM PC/XT/AT and most compatibles. The program requires DOS version 2.0 or higher and 640K of RAM, and will run with dual 360K floppy disk drives, one 1.2M floppy, or on a hard disk with at least 700K available. The program also requires at least a 1200 baud Hayes or compatible modem, and a CGA or EGA graphics monitor. Although not required, an EPSON MX-80 graphics printer (or compatible) is recommended.

The recommended configuration, for best performance, is an IBM AT (or compatible) with 80287 math co-processor, hard disk drive, MouseSystems PC mouse, 2400 baud modem, EGA monitor, and a laser printer.

## WHAT NEXT?

For more information about how to become a member of the WORKPLACE Network, for the location of the nearest WORKPLACE site, or for a personal demonstration, contact:

The WORKPLACE Network
1536 DeKalb Pike
Blue Bell, PA 19422

or call **(215) 272-7000**

(\bin\protex\manual\wp.Rev 10/88)

**BGDS000002**

# EXHIBIT 9

**Nixon, Coby**

| | |
|---|---|
| **From:** | Achey, Wes |
| **Sent:** | Wednesday, June 10, 2009 2:11 PM |
| **To:** | Kaplan, Alexander; Lawrence A. Husick; Solomon, Louis M. |
| **Cc:** | McGrath, Robin; Nixon, Coby |
| **Subject:** | Move v. REAL |

Alex/Lawrence,

I write regarding the need to schedule depositions in the Move v. REAL matter.  As of today, we plan to depose the following people: (1) Mark Tornetta; (2) Scott Tatro; (3) Andrew Rooke; and (4) Jay Bagdis.  We will also issue 30(b)(6) notices for both REAL and Equias. We plan to depose the aforementioned people/entities during the first two weeks of August. That said, pursuant to our agreement, we will delay serving subpoenas so that the parties can work together to schedule these depositions at a mutually agreeable time and place.  To that end, please provide us dates for when these depositions can take place during the first two weeks of August, as well as a proposed location for these depositions.

Finally, we also plan to depose Ben Leace (the attorney responsible for prosecuting the patents-in-suit), but we do not intend on taking Mr. Leace's deposition until the last week of August, and only to the extent we feel that a deposition of Mr. Leace is still necessary.

Please also let me know if REAL/Equias is unwilling or unable to accept service on behalf of any of the people named above.

Regards,

Wes

# EXHIBIT 10

**Nixon, Coby**

| | |
|---|---|
| **From:** | Nixon, Coby |
| **Sent:** | Monday, July 13, 2009 3:40 PM |
| **To:** | 'Kaplan, Alexander' |
| **Cc:** | 'Solomon, Louis M.'; lawrence@lawhusick.com; McGrath, Robin; Smith, Frank; Achey, Wes |
| **Subject:** | Move v. REAL:  Motion for Leave to Depose Jay Bagdis |

Alex,

We understand that Mr. Bagdis is confined in prison and that, as a result, Move must obtain leave of the Court to depose him.  See FRCP 30(a)(2)(B).  Please let us know whether REAL will oppose Move's planned motion for leave.

Regards,

Coby

_____

Coby S. Nixon
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
P:  (404) 881-7252
F:  (404) 253-8272
coby.nixon@alston.com
www.alston.com

# EXHIBIT 11

**Nixon, Coby**

| | |
|---|---|
| **From:** | Kaplan, Alexander [Akaplan@proskauer.com] |
| **Sent:** | Tuesday, July 14, 2009 10:18 AM |
| **To:** | Nixon, Coby |
| **Cc:** | Solomon, Louis M.; lawrence@lawhusick.com; McGrath, Robin; Smith, Frank; Achey, Wes |
| **Subject:** | RE: Move v. REAL: Motion for Leave to Depose Jay Bagdis |

Coby,
We do not intend to oppose Move's motion but we must coordinate on a date for the deposition convenient to all.


Alexander Kaplan | PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
v: 212.969.3671 | F: 212.969.2900
akaplan@proskauer.com | www.proskauer.com

---

**From:** Nixon, Coby [mailto:Coby.Nixon@alston.com]
**Sent:** Monday, July 13, 2009 3:40 PM
**To:** Kaplan, Alexander
**Cc:** Solomon, Louis M.; lawrence@lawhusick.com; McGrath, Robin; Smith, Frank; Achey, Wes
**Subject:** Move v. REAL: Motion for Leave to Depose Jay Bagdis

Alex,

We understand that Mr. Bagdis is confined in prison and that, as a result, Move must obtain leave of the Court to depose him.  See
FRCP 30(a)(2)(B).  Please let us know whether REAL will oppose Move's planned motion for leave.

Regards,

Coby

---

Coby S. Nixon
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
P:  (404) 881-7252
F:  (404) 253-8272
coby.nixon@alston.com
www.alston.com

*********************************************** IRS Circular 230 disclosure: To ensure
compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice
contained in this communication (including any attachments) is not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.
                                       NOTICE: This e-mail message and all attachments
transmitted with it may contain legally privileged and confidential information intended solely for the use of the