1

**Counsel E-Filing Joint Brief:**
Bert H. Deixler (SBN 70614)
bdeixler@kbkfirm.com
Laura W. Brill (SBN 195889)
lbrill@kbkfirm.com
KENDALL, BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA   90067
Telephone:   (310) 556-2700
Facsimile:   (310) 556-2705

2

3

4

5

6

*Attorneys for Defendant Counterclaim-Plaintiff*
*Real Estate Alliance, Ltd.*

7

8

[Counsel for Plaintiffs and Counterclaim-
Defendants also filing the Joint Brief are
listed at the conclusion of the document]

9

10

11   **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

12

13

| | |
|---|---|
| MOVE, INC., ET AL., | Case No. 2:07-CV-02185-GHK (AJWx) |
|       Plaintiffs, | Hon. George H. King |
|     v. | |
| REAL ESTATE ALLIANCE LTD., ET AL., | **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS** |
|       Defendants. | Date:          Dec. 12, 2011<br>Time:         9:30 a.m.<br>Courtroom:   650 |
| REAL ESTATE ALLIANCE, LTD., | |
|       Counterclaim-Plaintiff, | Case Filed:         Apr. 3, 2007<br>2d Am. Complaint Filed: Jan. 12, 2009<br>Counterclaims Filed:  Feb. 11, 2009<br>Trial Date:        TBD |
|     v. | |
| MOVE, INC., ET AL., | Discovery Cutoff:   Sept. 17, 2009<br>Pretrial Conference:  TBD<br>Trial Date:        TBD |
|       Counterclaim-Defendants. | |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ...................................................................................... v

GLOSSARY OF TERMS .......................................................................................... i

EXPLANATORY NOTES ....................................................................................... iii

CERTIFICATION OF COMPLIANCE .................................................................... iv

I.     REAL IS ENTITLED TO SUMMARY JUDGMENT THAT
       ASSERTED '989 CLAIMS 1, 6, 8 AND 9 ARE NOT ANTICIPATED ............ 1

       A.     REAL's Position ................................................................................... 1

              1.     Anticipation Requires That A Single Reference Disclose
                     Each Element Of A Properly Construed Patent Claim ................. 2

              2.     Real Is Entitled To Summary Judgment That No Reference
                     Anticipates Asserted '989 Claims 1, 6, 8 And 9 ........................ 3

                     a.     MIDAS V1.22S And V1.22UM Do Not Disclose The
                            Steps Of '989 Claim 1, Including Steps (a), (g) And
                            (h) ...................................................................................... 3

                     b.     MapInfo V2.0S And V2.0D Do Not Disclose The
                            Steps Of '989 Claim 1, Including Steps (a), (g) And
                            (h) ...................................................................................... 4

                     c.     WSoftware, WSourcecode And Document
                            (BGDS000434-35) Do Not Disclose The Steps Of
                            '989 Claim 1, Including Steps (a), (g) And (h) .................... 4

       B.     MOVE's Position ................................................................................. 5

II.    REAL IS ENTITLED TO SUMMARY JUDGMENT THAT NO
       ALLEGED ANTICIPATING REFERENCE IS PRIOR ART ......................... 7

       A.     REAL's Position ................................................................................... 7

1.     An Accused Infringer Must Establish By Clear and Convincing Corroborated Evidence a Prior Public Use, Sale or Offer for Sale ........................................................8

2.     No Alleged Anticipating Reference Is Prior Art ..........................8

    a.     MIDAS V1.22S And V1.22UM Were Not Publicly Available..................................................................9

    b.     MapInfo V2.0S And V2.0D Were Not Publicly Available..................................................................9

    c.     WSoftware, WSourcecode And Document (JA-R1295-96) Were Not Publicly Available ..........................10

B.     MOVE's Position ........................................................13

III.     REAL IS ENTITLED TO SUMMARY JUDGMENT THAT THE APPLICANT OF THE '989 PATENT APPLICATION DID NOT COMMIT INEQUITABLE CONDUCT ........................................14

    A.     REAL's Position ........................................................14

        1.     An Accused Infringer Must Prove By Clear And Convincing Evidence That The Patent Applicant Acted With Specific Intent To Deceive And That But-For Material Prior Art Was Withheld ................................15

        2.     There Is No Evidence Of A Specific Intent To Deceive Or That But-For Material Prior Art Was Withheld From The USPTO ......................................................16

    B.     MOVE's Position ........................................................17

IV.     MOVE'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT ........................................................17

    A.     MOVE's Position ........................................................17

        1.     Move Is Entitled To Summary Judgment of Non-Infringement..................................................................17

            a.     Undisputed Facts Regarding Accused Move Websites ......18

          b.      Move Does Not Directly Infringe As a Matter of Law........20

B.     REAL's Position ...................................................................23

     1.    MOVE Improperly Attempts To Read The Word "Boundaries" Out Of '989 Claim 1 "Selecting" Steps (c) And (f)...........................................................................24

     2.    The Evidence Contradicts MOVE's Assertion That A Third Party Human User, Not MOVE's Host Computer, Is Performing '989 Claim 1 "Selecting" Steps (c) And (f) ..............25

V.    MOVE'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY FOR ON-SALE BAR .................................................26

A.    MOVE's Position ...................................................................26

     1.    The '989 Patent is Invalid Under 35 U.S.C. Section 102(b)..........26

     2.    Undisputed Facts Regarding Mark Tornetta's Workplace Software...........................................................................26

     3.    The Sale of Workplace Constitutes an On-Sale Bar. ...................27

         a.      The '989 Patent Claims Have An April 24, 1989 Priority Date. ..............................................................28

         b.      The Agreement Constitutes a Commercial Sale. ...............31

         c.      The Invention was Ready for Patenting. ............................33

B.     REAL's Position ...................................................................34

     1.    The WSoftware Being Developed Under The License Agreement Was Maintained In Confidence And Is Not Prior Art ...........................................................................35

     2.    The License Agreement Does Not Constitute A Commercial Sale...........................................................................36

     3.    The Evidence Contradicts MOVE's Assertion That The '989 Patent Claims Are Not Entitled To The '576 Priority Filing Date ...................................................................37

VI.    MOVE'S MOTION FOR SUMMARY JUDGMENT OF PATENT
       INVALIDITY UNDER 35 U.S.C. §112 .............................................................39

       A.    MOVE's Position ...................................................................................39

             1.    The Claims of the '989 Patent Are Invalid Under § 112 ..............39

             2.    The '989 Patent Is Invalid for Lack of Written Description. ........40

             3.    The '989 Patent Claims Are Invalid for Lack of Enablement .......44

       B.    REAL's Position ...................................................................................46

VII.   MOVE'S MOTION FOR SUMMARY JUDGMENT REGARDING
       WILLFUL INFRINGEMENT ...........................................................................48

       A.    MOVE's Position ...................................................................................48

             1.    Move's Defenses Preclude a Finding of Willful
                   Infringement .................................................................................48

       B.    REAL's Position ...................................................................................49

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

3   **<u>CASES</u>**

4   *Adenta GmbH v. OrthoArm, Inc.*,
         501 F.3d 1364 (Fed. Cir. 2007) ................................................................... 8
5

6   *Akamai Technologies, Inc. v. Cable & Wireless Internet Services, Inc.*,
         344 F.3d 1186 (Fed. Cir. 2003) ................................................................... 7

7   *Allen Eng'g Corp. v. Bartell Indus., Inc.*,
         299 F.3d 1336 (Fed. Cir. 2002) ................................................................. 33
8

9   *Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
         314 F.3d 1313 (Fed. Cir. 2003) ................................................................. 41

10  *Anascape, Ltd. v. Nintendo of Am. Inc.*,
         601 F.3d 1333 (Fed. Cir.) ......................................................................... 44
11

12  *Augustine Med., Inc. v. Gaymar Indus., Inc.*,
         181 F.3d 1291 (Fed. Cir. 1999) ................................................................. 28

13  *Auto. Techs. Int'l v. BMW of N. Am., Inc.*,
         501 F.3d 1274 (Fed. Cir. 2007) ................................................................. 44
14

15  *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
         338 F.3d 1368 (Fed. Cir. 2003) ................................................................. 47

16  *BMC Res., Inc. v. Paymentech, L.P.*,
         498 F.3d 1373 (Fed. Cir. 2007) ........................................................... 18, 25
17

18  *Bone Care Int'l., LLC. v Pentach Pharma., Inc.*,
         741 F. Supp.2d 865 (N.D. Ill. 2011) ......................................................... 31

19  *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
         393 F.3d 1378, 1382 (Fed. Cir. 2005) ....................................................... 48
20

21  *Clock Spring, L.P. v. Wrapmaster, Inc.*,
         560 F.3d 1317 (Fed. Cir. 2009) ................................................................... 8

22  *Continental Can Co. USA, Inc. v. Monsanto Co.*,
         948 F.2d 1264 (Fed. Cir. 1991) ................................................................. 11
23

24  *Cordis Corp. v. Boston Sci. Corp.*,
         561 F.3d 1319 (Fed. Cir. 2009) ................................................................. 10

25  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
         424 F.3d 1293 (Fed. Cir. 2005) ................................................................... 3
26

27  *Dominant Semiconductors SDN. Bhd. V. OSRAM GmbH*,
         524 F.3d 1254 (Fed. Cir. 2008) ................................................................. 49

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
**07-CV-02185**

*Elan Corp., PLC v. Andrx Pharms., Inc.,*
    366 F.3d 1336 (Fed. Cir. 2004) ...................................................... 27

*Esai Co. Ltd. v. Dr. Reddy's Labs., Ltd.,*
    533 F.3d 1353 (Fed. Cir. 2008) ...................................................... 17

*Fiers v. Revel,*
    984 F.2d 1164 (Fed. Cir. 1993) ...................................................... 29

*Gechter v. Davidson,*
    116 F.3d 1454 (Fed. Cir. 1997) ........................................................ 2

*General. Elec. Co. v. United States,*
    654 F.2d 55 (Ct. Cl. 1981) .............................................................. 33

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
    45 F.3d 1550 (Fed. Cir. 1995) .......................................................... 2

*Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.,*
    No. 05-CV-73214-DT, 2009 WL 3199812, * 9 (E.D. Mich., Sept. 29, 2009) .......................................................................................... 49

*i4i Limited Partnership v. Microsoft,*
    598 F.3d 831 (Fed. Cir. 2010), 131 S. Ct. 2238 (2011) .................. 50

*i4i Ltd., Partnership v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010) ........................................................ 49

*In re Cronyn,*
    890 F.2d 1158 (Fed. Cir. 1989) ...................................................... 13

*In re Cygnus Telecomm. Tech., LLC, Patent Litig.,*
    536 F.3d 1343 (Fed. Cir. 2008) ...................................................... 32

*In re Donohue,*
    766 F.2d 531 (Fed. Cir. 1985) .......................................................... 4

*In re Gleave,*
    560 F.3d 1331 (Fed. Cir. 2009) ........................................................ 7

*In re Goodman,*
    11 F.3d 1046 (Fed. Cir. 1993) ........................................................ 44

*In re Omeprazole Patent Litig.,*
    536 F.3d 1361 (Fed. Cir. 2008) ...................................................... 28

*In re Seagate Tech., LLC,*
    497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) ............................ 48

*In re Wands,*
    858 F.2d 731 (Fed. Cir. 1988) ........................................................ 46

*In re Wertheim,*
    541 F.2d 257 (CCPA 1979) ............................................................ 38

vi

*Intel Corp. v. U.S. ITC,*
    946 F.2d 821 (Fed. Cir. 1991) .................................................................. 8

*Juicy, Inc. Whip v. Orange Bang, Inc.,*
    292 F.3d 728 (Fed. Cir. 2002) .................................................................. 4

*Keithley v. Homestore,*
    Case No. 3:03-cv-04447-SI
    (N.D. Cal. Nov. 19, 2008) ...................................................................... 20

*Kubota v. Shibuya,*
    999 F.2d 517 (Fed. Cir. 1993) ................................................................ 29

*Leibel-Flarsheim Co. v. Medrad, Inc.,*
    481 F.3d 1371 (Fed. Cir. 2007) ...................................................... 44, 45

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
    424 F3d. 1336 (Fed. Cir. 2005) ...................................................... 41, 42

*Lockwood v. Am. Airlines, Inc.,*
    107 F.3d 1565 (Fed. Cir. 1997) ............................................................. 29

*Martin v. Mayer,*
    823 F.2d 500 (Fed. Cir. 1987) ................................................................ 43

*MercExchange, LLC. v. Ebay, Inc.,*
    401 F.3d 1323 (Fed. Cir. 2005) ............................................................... 6

*Muniauction, Inc. v. Thomson Corp.,*
    532 F.3d 1318 (Fed. Cir. 2008) ...................................................... 18, 20

*National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,*
    166 F.3d 1190 (Fed. Cir. 1999) ............................................................. 44

*Norian Corp. v. Stryker Corp.,*
    363 F.3d 1321 (Fed. Cir. 2004) ............................................................... 8

*Northern Telecom, Inc. v. Datapoint Corp.,*
    908 F.2d 931 (Fed. Cir. 1990) ................................................................ 13

*Optium v. Emcore Corp.,*
    603 F.3d 1313 (Fed. Cir. 2010) ............................................................. 17

*Ormco Corp. v. Align Tech., Inc.,*
    463 F.3d 1299 (Fed. Cir. 2006) ............................................................. 20

*Pfaff v. Wells Electronics, Inc.,*
    525 U.S. 55 (1998) ........................................................................... passim

*PowerOasis, Inc. v T-Mobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008) .................................................. 28, 40, 43

*Ralston Purina Co. v. Far-Mar-Co.,*
    772 F.2d 1570 (Fed. Cir. 1985) ............................................................. 47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

*Real Estate Alliance, Ltd. v. Sarkisian,*
  C.A. No. 05-CV-3573 (E.D. PA) .................................................. 14, 34

*Robotic Vision Sys., Inc. v. View Eng'g, Inc. (Robotic III),*
  249 F.3d 1307 (Fed. Cir. 2001) ......................................................... 28

*Seal-Flex, Inc. v. Athletic Track & Ct. Constr.,*
  98 F.3d 1318 (Fed. Cir. 1989) ..................................................... 11, 14

*Seal-Flex, Inc., v. Athletic Track & Court Constr.,*
  98 F.3d 1318 (Fed. Cir. 1996) ......................................................... 14

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,*
  758 F.2d 613 (Fed. Cir. 1985) ......................................................... 11

*Shuffle Masker v. MP Games,*
  553 F. Supp. 1202 (D. Nev. 2008) ..................................................... 4

*SiRF Tech., Inc. v. ITC,*
  601 F.3d 1319 (Fed. Cir. 2010) ........................................................ 26

*Sitrick v. Dreamworks, LLC,*
  516 F.3d 993 (Fed. Cir. 2008) ......................................................... 44

*Studiengesellschaft Köhle, m.b.H. v. Dart Indus., Inc.,*
  726 F.2d 724 (Fed. Cir. 1984) .......................................................... 2

*Therasense, Inc. v. Becton Dickinson & Co.,*
  99 USPQ2d 1065 (Fed. Cir. 2011) ........................................ 15, 17, 51

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.,*
  595 F.3d 1360 (Fed. Cir. 2010) ........................................................ 36

*Tronzo v. Biomet, Inc.,*
  156 F.3d 1154 (Fed. Cir. 1998) ................................................... 29, 42

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................ 49

*Vivid Techs., Inc. v. American Science & Eng'g, Inc.,*
  200 F.3d 795 (Fed. Cir. 1999) ......................................................... 26

*Wagoner v. Barger,*
  463 F.2d 1377 (C.C.P.A. 1972) ................................................... 29, 30

*Waldemar Link v. Osteonics Corp.,*
  32 F.3d 556 (Fed. Cir. 1994) .......................................................... 28

*Wang Labs., Inc. v Toshiba Corp.,*
  993 F.2d 858 (Fed. Cir. 1993) ......................................................... 29

*Weatherchem Corp. v. J.L. Clark Inc.,*
  163 F.3d 1326 (Fed. Cir. 1998) ................................................... 28, 34

viii

## STATUTES

35 U.S.C. §102......................................................................................... passim

35 U.S.C. §102(a) ........................................................................................ 5

35 U.S.C. §102(b) ................................................................................ passim

35 U.S.C. §120 ..................................................................................... passim

## OTHER AUTHORITIES

Manual of Patent Examining Procedure §201.08 .................................. 37, 38

Manual of Patent Examining Procedure §706.03 ....................................... 38

# GLOSSARY OF TERMS

The following is a list of definitions for certain terms used in this Memorandum:

| 1. | "REAL" | Refers to Defendant-Counterclaim Plaintiff Real Estate Alliance, Ltd. |
|---|---|---|
| 2. | "MOVE" | Refers to Plaintiff-Counterclaim Defendant Move, Inc. |
| 3. | "'989 Patent" or "'989" | Refers to REAL's U.S. Patent No. 5,032,989 |
| 4. | "'576 Patent" | Refers to REAL's U.S. Patent No. 4,870,576 |
| 5. | Patent Applicant or Applicant | Refers to named inventor Mark Tornetta of the '989 Patent and '576 Patent |
| 6. | "USPTO" | Refers to United States Patent & Trademark Office |
| 7. | "Examiner" | Refers to the "Examiner" at the USPTO who examined the '989 and '576 Patents |
| 8. | "MapInfo" | Mapping Information Systems Corporation |
| 9. | "MIDAS V1.22S" | Refers to Version 1.22 of MapInfo's MIDAS Software |
| 10. | "MIDAS V1.22UM" | Refers to MapInfo's MIDAS V1.22S User's Manual |
| 11. | "MapInfo V2.0S" | Refers to Version 2.0 of MapInfo Software |
| 12. | "MapInfo V2.0D" | Refers to Version 2.0 MapInfo Demonstration |
| 13. | "WSoftware" | Refers to Workplace Software delivered by inventor Mark Tornetta to Synermation, Inc. pursuant to a confidential technology development License Agreement dated January 15, 1988 |
| 14. | "WSourcecode" | Refers to Workplace Sourcecode |
| 15. | "Federal Circuit" | Court of Appeals for the Federal Circuit |
| 16. | "MPEP" | Manual of Patent Examining Procedure |
| 17. | "RMI" | REAL Is Entitled To Summary Judgment That Asserted '989 Claims 1, 6, 8 And 9 Are Not Anticipated |
| 18. | "RMII" | REAL Is Entitled To Judgment That No Alleged Anticipating Reference Is Prior Art |

| 19. | "RMIII" | REAL Is Entitled To Summary Judgment That The Applicant Of The '989 Patent Application Did Not Commit Inequitable Conduct |
|---|---|---|
| 20. | "REAL's Position to MMIV" | REAL's Position to MOVE's Motion For Summary Judgment Of Noninfringement |
| 21. | "REAL's Position to MMV" | REAL's Position To MOVE's Motion For Summary Judgment Of Patent Invalidity Under 35 U.S.C. §102(b) |
| 22. | "REAL's Position to MMVI" | REAL's Position To MOVE's Motion For Summary Judgment Of Patent Invalidity Under 35 U.S.C. §112 |
| 23. | "REAL's Position to MMVII" | REAL's Position To MOVE's Motion For Summary Judgment To Preclude A Finding Of Willful Infringement |
| 24. | "MMIV" | MOVE's Motion For Summary Judgment Of Noninfringement |
| 25. | "MMV" | MOVE's Motion For Summary Judgment Of Patent Invalidity Under 35 U.S.C. §102(b) |
| 26. | "MMVI" | MOVE's Motion For Summary Judgment Of Patent Invalidity Under 35 U.S.C. §112 |
| 27. | "MMVII" | MOVE's Motion For Summary Judgment To Preclude A Finding Of Willful Infringement |
| 28. | "MOVE'S Position to RMI" | MOVE's Position To REAL's Motion For Summary Judgment That Asserted '989 Claims 1, 6, 8 And 9 Are Not Anticipated |
| 29. | "MOVE'S Position to RMII" | MOVE's Position To REAL's Motion For Summary Judgment That No Alleged Anticipating Reference Is Prior Art |
| 30. | "MOVE'S Position to RMIII" | MOVE's Position To REAL's Motion For Summary Judgment That The Applicant Of The '989 Patent Application Did Not Commit Inequitable Conduct |
| 31. | "JA-___" | Joint Appendix |
| 32. | "RUF____" | REAL's Undisputed Fact No. ____ |
| 33. | "MUF____" | MOVE's Undisputed Fact No. ____ |

ii

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*
*07-CV-02185*          **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**

## EXPLANATORY NOTES

1.      Unless otherwise specifically indicated in this document, emphasis has been added to all quoted text appearing in italics, underline, or bold.

2.      References to "Tr. ___" refer to the deposition transcript of the individual indicated.

3.      References to "Ex. ___" refer to the exhibits marked during a deposition or attached to the Declaration of the individual indicated.

4.      Specific passages from the '989 and '576 Patents are referenced by the column and line number in which they appear.   Thus, a citation to column 1, line 10 of the '989 Patent would be 1:10.

# CERTIFICATION OF COMPLIANCE

In accordance with the Court's February 11, 2009, Order Re: Summary Judgment Motions, counsel for Move, Inc., National Association of Realtors, National Association of Home Builders, and Real Estate Alliance Ltd. have conferred and agree that each parties' brief is less than twenty-five pages, as required by paragraph 6 of the Court's Order.

# I.   REAL IS ENTITLED TO SUMMARY JUDGMENT THAT ASSERTED '989 CLAIMS 1, 6, 8 AND 9 ARE NOT ANTICIPATED

## A.   <u>REAL's Position</u>

REAL disagrees with MOVE's contention that asserted '989 Claims 1, 6, 8 and 9 are invalid for anticipation under 35 U.S.C. §102, and believes that the record indisputably supports REAL's position. MOVE's expert Professor Bacastow admits that only the following specific references are alleged to anticipate the asserted '989 Patent claims (JA-R835-38; RUF1):

- MIDAS V1.22S (JA-R1179 (CD "Midas 1.22")) and MIDAS V1.22UM (JA-R959-1178). JA-R829, 833-34.

- MapInfo V2.0S (JA-R1179 (CD "MapInfo 2.0")) and MapInfo V2.0D (JA-R1179 (CD "MapInfo 2.0"); 2867 ("DEMO.BAT")). JA-R839.

- WSoftware (JA-R1294), WSourcecode (JA-R2269-829) and document (JA-R1295-96). JA-R843-47, 849-51 (Professor Bacastow relied upon another MOVE expert Professor Guth's analysis of WSoftware and WSourcecode.).

MOVE must prove by clear and convincing evidence that each reference above discloses every step of asserted independent '989 Claim 1 and dependent Claims 6, 8 and 9. This it cannot do. There is no evidence, let alone clear and convincing evidence, that each reference discloses performing the steps of Claim 1, including Step (a) "creating a database of the available real estate properties", and "displaying" and "identifying" these available properties as required in Claim 1 Steps (g) and (h), respectively, which are also steps required by asserted dependent Claims 6, 8 and 9. MOVE's Professor Bacastow admitted that <u>all</u> of the alleged references fail to disclose these steps, and MOVE's Professor Guth admitted that the WSoftware and WSourcecode do not disclose these steps as well. Thus, summary judgment that no reference anticipates asserted '989 Claims 1, 6, 8 and 9 should be granted.

1
2

### 1.   Anticipation Requires That A Single Reference Disclose Each Element Of A Properly Construed Patent Claim

3   Under 35 U.S.C. §102, anticipation requires that each element of the claimed
4   invention be disclosed in a "single" prior art reference. *Studiengesellschaft Köhle,*
5   *m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984). In a claimed
6   method, such as '989 Claims 1, 6, 8 and 9, "the claimed process, including each step
7   thereof, must have been described or embodied, either expressly or inherently, in a
8   single reference." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45
9   F.3d 1550, 1554 (Fed. Cir. 1995). "[E]very limitation of a claim must identically
10  appear in a single prior art reference for it to anticipate the claim. . . . [T]he claim
11  must first have been correctly construed to define the scope and meaning of each
12  contested limitation." *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997).

13  On March 22, 2011, the Federal Circuit issued its Opinion construing the claim
14  terms in dispute with respect to asserted independent '989 Claim 1. JA-R604-16.
15  Asserted dependent '989 Claims 6, 8 and 9 include all of the limitations of Claim 1 as
16  construed by the Federal Circuit. For purposes of streamlining this Motion to establish
17  that the alleged anticipating references relied upon by MOVE do not anticipate
18  asserted '989 Claims 1, 6, 8 and 9, REAL focuses its discussion on the Federal
19  Circuit's Opinion regarding Claim 1 Step (a) "creating a database of the available real
20  estate properties," and Steps (g) and (h). JA-R607-609.

21  The Federal Circuit held that Step (a) does not encompass creating only the
22  structure of the database, *i.e.*, creating an empty database with a defined structure.
23  Rather, the Federal Circuit held (JA-R608-09): "the database must be populated with
24  at least two properties upon creation. These available properties are first mentioned in
25  the preamble, and they are displayed in step (g) and identified in step (h)." The
26  Federal Circuit concluded that "step (a) means creating a database containing data
27  representing two or more available real estate properties." JA-R609.

28

2

## 2.    Real Is Entitled To Summary Judgment That No Reference Anticipates Asserted '989 Claims 1, 6, 8 And 9

None of the alleged anticipating references relied on by MOVE disclose the steps of '989 Claim 1, including Step (a), creating a database containing data representing two or more available real estate properties, and displaying and identifying these available properties as required by Claim 1 Steps (g) and (h), respectively. Thus, REAL is entitled to summary judgment that no reference anticipates asserted '989 Claims 1, 6, 8 and 9. *See*, *e.g.*, *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005) (affirming "summary judgment that claim . . . not anticipated").

### a.  MIDAS V1.22S And V1.22UM Do Not Disclose The Steps Of '989 Claim 1, Including Steps (a), (g) And (h)

MIDAS V1.22UM (JA-R959-1178) does not disclose the steps of '989 Claim 1, including Steps (a), (g) and (h), on any of its pages.   RUF11-13.   There is only one reference in the entire document to anything even related to real estate. *See* JA-R994 ("for a realtor, the resources may be the houses currently on the market"). But this does not disclose Claim 1 Steps (a), (g) and (h).

MOVE's Professor Bacastow admits that MIDAS V1.22S does not disclose Claim 1 Step (a). JA-R861-62 ("It did not have a database of [available] real estate properties. . . .") Professor Bacastow conceded that he had to create a database ("AVAILABLE.DBF") of available properties to operate MIDAS V1.22S which he "couldn't get ... to function" (JA-R866-872; RUF14, 55), and that he did so after commencement of and "for the purpose of this litigation" (JA-R872; RUF15, 56). He admits that he is not aware of anyone, prior to his own creation of a database of available properties to operate with MIDAS V1.22S, that performed '989 Claim 1 Steps (a) through (h) using MIDAS V1.22S. JA-R873-75; RUF16 ("Do I have evidence of . . . someone standing there doing it? No, I do not.") Professor

Bacastow's litigation induced attempt to perform '989 Claim 1 Steps (a) through (h) is not prior art. *See Juicy, Inc. Whip v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002) (corroborating proof must be contemporaneous).

### b. MapInfo V2.0S And V2.0D Do Not Disclose The Steps Of '989 Claim 1, Including Steps (a), (g) And (h)

MapInfo V2.0S and V2.0D do not disclose the steps of '989 Claim 1, including Steps (a), (g) and (h). RUF17-19. MOVE's Professor Bacastow admits that the only MapInfo V2.0S he received "was unable to run the program" and that he is "unaware of any version of MapInfo Version 2.0 that will run. . . [t]hat will actually operate." JA-R839-40; RUF20-21.[1] Thus, there is no known enabling disclosure of MapInfo V2.0S that performs each step of '989 Claim 1, including Steps (a), (g) and (h). *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985) (To anticipate the reference must also enable.) As for the MapInfo V2.0D, Professor Bacastow admitted that the demonstration is simply "static images" and "is not executable software." JA-R840-41. These static images do not disclose the steps of Claim 1, including Steps (a), (g) and (h). *See* JA-R2236-68 (Printout of "DEMO.BAT" file); RUF22-25.

### c. WSoftware, WSourcecode And Document (BGDS000434-35) Do Not Disclose The Steps Of '989 Claim 1, Including Steps (a), (g) And (h)

WSoftware and WSourcecode do not disclose the steps of '989 Claim 1, including Steps (a), (g) and (h). RUF26-28, 29-31. MOVE's Professor Guth admits that the code "does not include routines or language for creating a database" (JA-R2940-41) and that the code does not have access to identify the available properties (JA-R2932-33, 2935, 2598). Professors Bacastow and Guth both also admit

---

[1] In disputing REAL's uncontroverted facts, MOVE improperly cites to unsworn, inadmissible expert reports in attempting to rebut the sworn admissions of its experts. *See Shuffle Masker v. MP Games*, 553 F. Supp. 1202, 1210 (D. Nev. 2008).

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS
07-CV-02185

1   that WSoftware does not include '989 Claim 1 Steps (a), (g) and (h). JA-R846-47

2   ("The software . . . was not provided with a database, therefore, you could not plot the

3   points."); JA-R2961 ("It cannot display points unless you supply it with the database

4   and we did not have a database."); JA-R2837 (FIG. 5, n.12).

5       Finally, MOVE relies on document (JA-R1295-96) which refers to "The

6   WORKPLACE Network!" and "WORKPLACE software." The static images and text

7   of document (JA-R1295-96) do not disclose the steps of '989 Claim 1, including

8   Steps (a), (g) and (h).   RUF32-35.   Inventor Tornetta testified that as of the April

9   22, 1988 date of this document, he had not delivered WSoftware to Synermation

10  pursuant to a confidential technology development License Agreement and no

11  working embodiments of WSoftware or Workplace Network even existed. *See* RMII

12  at 12; REAL's Position to MMV at 35 n.19; REAL's Response to MUF83-91.

13  **B.   MOVE's Position**

14      There is substantial evidence from which a jury could find that Workplace and

15  MIDAS/MapInfo disclosed all elements of the '989 claims.   The entire basis for

16  REAL's §102(a) motion is that the prior art does not teach the creation of a "database

17  of the available real estate properties."   REAL is wrong.

18      With respect to MIDAS/MapInfo, [2] the MIDAS User Manual (which

19  accompanied the MIDAS Software), among other references, teaches that MIDAS

20  (1) was developed "for a realtor" and (2) used databases containing "houses currently

21  on the market" (MX.27 at M977; MUF125).   John Haller, founder and developer of

22  the MIDAS/MapInfo system (an uncompensated, neutral third party), testified that

23  MIDAS included the creation of a database (MX.8 at 50:12-21; 87:1-11; MUF126).

24  _____

25  [2]   Move's anticipation claim is not based only on MIDAS V1.22S, MIDAS
    V1.22UM, MapInfo V2.0S and MapInfo V2.0D.   Rather, Move asserts that

26  MIDAS/MapInfo is anticipatory prior art as *demonstrated* by the foregoing evidence,
    among other evidence.   As discussed in Section II(B), MIDAS (later renamed

27  MapInfo) was offered for sale as early as 1986 and teaches *all* steps of the claimed
    method (MUF125-127).

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1   Indeed, half of the 34 page user manual is devoted to teaching the user how to create a

2   database (MX.27 at M993-1040; MUF127).

3       The evidence also establishes that Tornetta's Workplace system disclosed the

4   creation of a database of available real estate properties (*See e.g.*, MX.39 at M1552;

5   MX.41 at M1588; MUF128).   An April 22, 1988, Times Herald article about

6   Workplace states "superimposed on this map is a series of 'points', each of which

7   *represents at least one property in the WORKPLACE database*" (MX.18; MUF83).

8   REAL asserts that because there is no evidence of an actual database of properties

9   created before the April 24, 1988, critical date, Workplace and MIDAS cannot

10   invalidate the '989 patent.   But there is substantial evidence from which a jury can

11   find that databases of available real estate properties were created pre-critical date.

12   For example, in July of 1986, MapInfo demonstrated MIDAS to a group of realtors

13   using the MLS database of properties (MX.24 at M900, 904; MUF129).   A

14   presentation slide explained that MIDAS "automatically displays *requested MLS*

15   *properties* on a map" (*Id.*).   The evidence also shows that databases were created

16   with the Workplace system (MX.52 at 203:7-25; MX.13 at 224:13-226:10; MUF67,

17   130).[3]   Even if a database of properties were in fact never created pre-critical date (a

18   disputed fact), prior art anticipates a method claim *even if* it was never used to

19   practice the claimed method.   *See, e.g., MercExchange, LLC. v. Ebay, Inc.,* 401 F.3d

20   1323, 1335 (Fed. Cir. 2005) (article describing system designed to perform steps of

21   method claim sufficient to invalidate method claim).

22   _____

    [3]  Move's experts never admitted that MIDAS and Workplace failed to disclose the

23   "creation of a database."   Rather, they acknowledged that the Workplace and

    MapInfo software produced (20 years after creation) did not include a *pre-populated*

24   database of available real estate (MX.4 at 243:21-256:20; MUF125-128).   The

    evidence is clear that both MIDAS and Workplace relied on databases, and Bacastow

25   and Guth explained in detail how the databases worked and how those references

26   disclosed every element of the '989 claims, including "creation of a database"

27   (MX.39 at M1512-17, 1552; MX.41 at M1588).

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

In order to anticipate, prior art must: (1) "disclose each and every element of the claimed invention," and (2) "enable one of ordinary skill in the art to use the invention without undue experimentation."   *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).   A reference enables a method claim if a skilled artisan would know how to carry out the method in light of the reference.   *Id.*   If both requirements are met, it is not necessary to show that the method was actually performed.   *See id.* at 1334–35.   Because MIDAS/MapInfo and Workplace both (1) disclose creating a database of real estate properties, and (2) enable one of skill to create such a database, whether an actual database of properties was created pre-critical date is legally irrelevant (as well as factually disputed).   Moreover, creating a database of properties is inherently disclosed within MIDAS and Workplace, since both depend on databases to operate as intended.   *See Akamai Technologies, Inc. v. Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003).

## II.   REAL IS ENTITLED TO SUMMARY JUDGMENT THAT NO ALLEGED ANTICIPATING REFERENCE IS PRIOR ART

### A.   <u>REAL's Position</u>

The alleged anticipating references relied on by MOVE, namely MIDAS V1.22S and V1.22UM, MapInfo V2.0S and V2.0D, WSoftware, WSourcecode and document (JA-R1295-96), do not anticipate the asserted '989 claims for a second reason – each of these references is not prior art to the asserted '989 claims.

MOVE contends that each of these references was publicly available (publicly used, sold or on sale) before the "critical date" for the '989 Patent, and therefore each reference is prior art to the asserted '989 claims under 35 U.S.C. §102(b). JA-R813-16.[4] The parties dispute what date is the critical date for the '989 Patent: REAL contends (RUF 42-44) it is March 19, 1985 (one year before the filing date of the

---

[4]   The critical date is a date one year prior to the filing date for the application for patent in the United States.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

parent '576 application from which the asserted '989 claims are entitled to priority under 35 U.S.C. §120); and MOVE contends it is April 24, 1988, one year before the filing date of the '989 application. Regardless of which critical date is applied, MOVE cannot meet its burden of establishing by clear and convincing corroborated evidence that the alleged anticipating references were publicly available before that date.

### 1. An Accused Infringer Must Establish By Clear and Convincing Corroborated Evidence a Prior Public Use, Sale or Offer for Sale

An accused infringer seeking to invalidate a patent claim under 35 U.S.C. §102(b) must show by clear and convincing evidence that the claimed invention was in public use, on sale or offered for sale before the patent's critical date.   *See, e.g., Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009). Evidence that a public use, offer for sale or sale before the critical date "may have been 'likely'" is insufficient to meet this standard. *Intel Corp. v. U.S. ITC*, 946 F.2d 821, 830 (Fed. Cir. 1991). Sufficient corroboration of testimonial evidence is also required to establish an invalidating prior use, offer for sale or sale under 35 U.S.C. §102. *See*, *e.g.*, *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007) ("a patent cannot be invalidated based on one person's testimony alone without corroborating evidence, particularly documentary evidence.")

### 2. No Alleged Anticipating Reference Is Prior Art

There is no clear and convincing corroborated evidence that a public use, sale or offer for sale of any of the alleged anticipating references occurred prior to the critical date. Thus, REAL is entitled to summary judgment that MIDAS V1.22S and V1.22UM, MapInfo 2.0S and V2.0D and WSoftware, WSourcecode and document (JA-R1295-96) are not prior art to asserted '989 Claims 1, 6, 8 and 9. *See*, *e.g.*, *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1330 (Fed. Cir. 2004) (affirming reference was not prior art because of "the lack of evidence of actual availability" at a meeting).

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*     **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

### a. MIDAS V1.22S And V1.22UM Were Not Publicly Available

Move's Professor Bacastow admitted "I have no knowledge of invoices of actual sales" for MIDAS V1.22S. JA-R830; RUF48. Mr. Barry Indyke, a MapInfo Principal Software Engineer, also testified that he does not have "sales documentation" for MIDAS V1.22S. JA-R709. Professor Bacastow further admitted: "I do not have direct evidence" that MIDAS V1.22S and V1.22UM were delivered to a customer prior to the critical date (JA-R831-32; RUF49); he "never received" a shrink wrap package of MIDAS V1.22S delivered to customers; and he is not aware of "any customer that received a shrink-wrapped package of software" or "any trade magazines" or "peer-reviewed article" that announced the release of MIDAS V1.22 (JA-R860-61, 864-65, 878-79; RUF50-54). There is no evidence, let alone clear and convincing corroborated evidence, that anyone ever used MIDAS V1.22S to perform the steps of '989 Claim 1 before Professor Bacastow's own litigation induced attempt. *See* RMI at 3-4.

### b. MapInfo V2.0S And V2.0D Were Not Publicly Available

Mr. Indyke also testified that he has no "sales documentation" for MapInfo V2.0S. JA-R709; RUF59. MOVE's Professor Bacastow testified that the only MapInfo V2.0S he received "was unable to run the program" and that he is "unaware of any version of MapInfo Version 2.0 that . . . will actually operate." JA-R839-40; RUF60-61. He acknowledged that V2.0S had "some bugs" in it (JA-R842-43; RUF63) and that MapInfo would not have released V2.0S that was not executable (JA-R843; RUF64 ("It's unlikely that any software company . . . would release software that was not functional.")) As for the "static images" of V2.0D, Mr. John Haller, MapInfo's co-founder, could not recall which version of MIDAS or MapInfo was presented in demonstrations. JA-R639,641, 876-77; RUF65-68. Thus, there is no evidence that an executable version of V2.0S ever existed, and no evidence, let alone clear and convincing corroborated evidence, that MapInfo V2.0D was ever presented

1  to customers or that anyone ever used MapInfo V2.0S to perform the steps of '989

2  Claim 1.

### c.  WSoftware, WSourcecode And Document (JA-R1295-96) Were Not Publicly Available

5  WSoftware and WSourcecode were created by '989 inventor Tornetta (JA-

6  R656-59) under a confidential technology development License Agreement dated

7  January 15, 1988 between Realpro, Ltd.[5] and Synermation (JA-R1267-93; RUF70).

8  Under the terms (¶¶2.8, 5.5) of the agreement, WSoftware and WSourcecode

9  developed by inventor Tornetta were maintained "in confidence" through termination

10  of the agreement. MOVE's Professor Guth confirmed that WSoftware and

11  WSourcecode were never made publicly available. JA-R2925, 2938-39; RUF72-73

12  ("I don't think this was ever publicly available"). Because WSoftware and

13  WSourcecode were maintained in confidence under the License Agreement, they are

14  not prior art under 35 U.S.C. §102. *See Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d

15  1319, 1333 (Fed. Cir. 2009) ("where a distribution is made to a limited number of

16  entities, a binding agreement of confidentiality may defeat a finding of public

17  accessibility.")

18  Furthermore, WSoftware provided by inventor Tornetta to Synermation under

19  the License Agreement had a creation date of May 23, 1988 and did not include a

20  database and therefore was not capable of displaying or identifying available

21  properties. JA-R2956-58, 2961, 846-47, 1294; RUF75-76.   Synermation

22  subsequently "terminated" the License Agreement by the end of 1988 because their

23  testing of the Workplace Network "failed" in September 1988, before the first

24  "working version" of the claimed invention was completed a month before the '989

---

[5]  Realpro, the original assignee of the '989 Patent, was formed by inventor Tornetta and three other business partners to develop a real estate search and location system. JA-R645-48; RUF71.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1   patent application was filed. JA-R649-50, 652-53, 660-61, 665-68; RUF77-78. Thus,

2   the WSoftware being developed by inventor Tornetta and provided to Synermation

3   under the License Agreement is not prior art, because it was not completed and

4   known to work for its intended purpose, and certainly does not constitute an offer for

5   commercial sale of the claimed invention. *See Seal-Flex, Inc. v. Athletic Track & Ct.*

6   *Constr.*, 98 F.3d 1318, 1322 (Fed. Cir. 1989) ("Precedent illustrates a variety of

7   factual situations wherein contacts with potential customers before an invention was

8   completed did not start the accrual of the on-sale bar period.").[6]

9       MOVE also relies on document (JA-R1295-96) that refers to "The

10  WORKPLACE Network!" and "WORKPLACE software" and asserts that this

11  document was published as a supplement in The Times Herald newspaper on April

12  22, 1988, more than one year before the filing date of the '989 patent application on

13  April 24, 1989. This document was authored by B. Jay Bagdis, Esq., former General

14  Counsel of Realpro and officer of REAL.[7] JA-R686, 634-36; RUF79. Mr. Bagdis

15  was not involved in prosecution of the '989 patent application and inventor Tornetta

16  had no knowledge of this document prior to his deposition on May 18, 2006. JA-

17  R628; RUF81-82.

18      Mr. Bagdis testified that document (JA-R1295-96) are parts or cutouts of a

19  purported supplement that he "thinks" he received "ten copies in a manila envelope

20  _____

21  [6] *See*, *e.g.*, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1360, 1361 (Fed. Cir.

22  2010) ("invention had not been offered for a commercial sale"); *Continental Can Co.
    USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991) (joint development

23  between customer and supplier did not start the critical date); *Shatterproof Glass
    Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 622-23 (Fed. Cir. 1985) (solicitation

24  of customers for an invention undergoing technical development was not an on-sale

25  event.)

26  [7] At the time of his deposition on September 9, 2009, Mr. Bagdis was incarcerated
    following a conviction in April 2009 for conspiracy to defraud the United States and

27  failure to file income tax returns. JA-R683-84; RUF80.

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

dropped off or in the mail from the Times Herald." JA-R693; RUF83. He also executed a declaration on March 27, 2007 in Civil Action No. 2:05-cv-03575-TMG (E.D. Pa.), including the conclusory statement that the "article was published on April 22, 1988," despite also stating that, "as of that time, the WORKPLACE network was not operational." JA-R1298. This conclusory statement in Mr. Bagdis's declaration is also contrary to Mr. Bagdis's testimony that he was a subscriber of the Times Herald local newspaper in April 1988, recalls receiving the Times Herald on April 22, 1988, and does not recall seeing document (JA-R1295-96) in the paper on that date. JA-R693; RUF84.

This conclusory statement is further called into question by both inventor Tornetta's and Mr. Bagdis's acknowledgement that a working embodiment of WSoftware and Workplace Network did not exist at this time. Inventor Tornetta testified that as of the April 22, 1988 date of document (JA-R1295-96), he had not delivered WSoftware to Synermation and no working embodiments of WSoftware, including a database containing data representing two or more available properties, even existed. JA-R662-63; RUF85. He further testified that Workplace Network was "being tested" by Synermation in September 1988, and was not operational before the License Agreement was terminated at the end of 1988. JA-R660-61, 667-68; RUF86. Mr. Bagdis also understood that WSoftware created by inventor Tornetta at this time did not include a database of available properties and could not perform any of the functions of displaying and identifying the available properties. JA-R687-90; RUF85.

The undisputed evidence is that, on or about September 5, 2008, an investigation was undertaken by Peter Bentz, Director of Research with H.R. Huff Asset Management Co., as to whether document (JA-R1295-96) was ever published in a supplement to the Times Herald newspaper on April 22, 1988 and/or made publicly accessible or available in any article maintained by that newspaper. In a sworn Declaration (JA-R1459-63), Mr. Bentz concluded that the document had not

1  been published and is not otherwise publicly available or accessible (¶¶9-11): "the. . .

2  document. . . was not indexed or stored in any publicly accessible archive associated

3  with the Times Herald newspaper"; "no evidence that the. . . document. . . was ever

4  disseminated to the public, in any manner, via The Times Herald newspaper"; and "no

5  evidence the. . . document. . . was ever displayed to the public, via The Times Herald

6  newspaper. . . ."  RUF87.   MOVE has not undertaken any investigation of its own

7  rebutting the foregoing. RUF88, 108.

8      Thus, document (JA-R1295-96) is not prior art to the '989 patent. MOVE has

9  not met and cannot meet its burden of showing by clear and convincing evidence that

10  document (JA-R1295-96) was either disseminated or indexed in a library to be a

11  publicly accessible printed publication under 35 U.S.C. §102. *See Northern Telecom,*

12  *Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990) ("unable to find that

13  anyone could have had access to the documents by the exercise of reasonable

14  diligence"); *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989) ("the three student

15  theses were not accessible to the public because they had not been either catalogued

16  or indexed in a meaningful way").

17      **B.    MOVE's Position**

18      There is ample evidence from which a jury could find that MIDAS/MapInfo

19  and Workplace were publicly available before the April 24, 1988, critical date

20  (discussed in Section V(A)(3)(a)).   MIDAS was "offered for sale beginning in the

21  second half of 1986, and was actively being sold in early 1987" (MX.23; MUF131).

22  In a July 18, 1986, presentation to the Albany Board of Realtors, MIDAS was offered

23  for sale for $27,000 (MX25 at M914; MUF132).   In addition, MIDAS Version 1.2

24  (the version produced and analyzed in detail) was offered for sale "beginning in

25  March 1987," and Version 2.0 (renamed "MapInfo") was "released before the end of

26  1987" (MX.23; MUF133).   The Midas User Manual is dated August 1987 and was

27  distributed with the software (MX.27 at M946; MX.8 at 83:2-23; MUF134-35).

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1    With respect to Workplace, as set forth in section V(A), the Agreement was not
2    confidential and did not require the software to be maintained "in confidence"
3    (MX.17 at 804-811; MUF54-59).   There is also no evidence that Synermation
4    terminated the Agreement because the system failed (MX.14 at 102:8-10, 105:9-
5    106:7; MUF137).   In fact, Tornetta testified to having no memory of why
6    Synermation terminated the Agreement and conceded it may have been due to "other
7    factors" (*Id*.).   REAL's reliance on *Seal-Flex* is likewise misguided.   There the
8    Federal Circuit held "an inventor may [not] avoid the on-sale bar while engaging in
9    commercial activity, simply by continuing to make improvements in the
10   commercialized invention," which is the situation here.   *Seal-Flex, Inc.*, *v. Athletic
11   Track & Court Constr.*, 98 F.3d 1318, 1324 (Fed. Cir. 1996).

12   Finally, there is ample evidence from which a jury could find that the Times
13   Herald article was published.   In the *Sarkisian* action, the article's author confirmed
14   it was published, and Tornetta also testified it was published and that he did not
15   challenge its authenticity (MX.30; MX.13 at 235:10-238:4; MUF74-77,136).   REAL
16   now relies on inadmissible, post-discovery produced hearsay to argue it was not
17   published (See Section II(A)(2)(c)).   Even if REAL's evidence were admissible, the
18   fact that REAL could not locate an advertising insert from a newspaper published 23
19   years ago hardly proves it was never published, especially given REAL's admissions
20   that it was.   This is a classic disputed issue of fact, precluding summary judgment.

21   **III.   REAL IS ENTITLED TO SUMMARY JUDGMENT THAT THE**
22   **APPLICANT OF THE '989 PATENT APPLICATION DID NOT**
23   **COMMIT INEQUITABLE CONDUCT**

24   **A.   REAL's Position**

25   There is no evidence from which a reasonable fact finder could conclude that
26   REAL's inventor Tornetta committed inequitable conduct during prosecution of the

27
28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

'989 patent.[8]  MOVE accuses inventor Tornetta of an intentional failure to disclose to the USPTO during prosecution of the '989 Patent the WSoftware and document (JA-R1295-96).  There is no evidence that inventor Tornetta had a specific intent to deceive the USPTO or that the WSoftware and document (JA-R1295-96) were but-for material prior art to the '989 claimed inventions.  In fact, the WSoftware and document (JA-R1295-96) are not material because they are not prior art.

The Federal Circuit's recent *en banc* decision in *Therasense*, 99 USPQ2d 1065, 1072, acknowledged that the Court "now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." MOVE's assertion of inequitable conduct falls squarely into the same category of overuse, plaguing this Court with a meritless claim of inequitable conduct. MOVE's Professor Bacastow admitted that, in view of the stricter standard now imposed by the Federal Circuit, which he learned of after writing his expert report, his analysis of the issue of inequitable conduct based on an asserted failure to disclose the Workplace Software "is no longer relevant." JA-R823-24; RUF90.

### 1. An Accused Infringer Must Prove By Clear And Convincing Evidence That The Patent Applicant Acted With Specific Intent To Deceive And That But-For Material Prior Art Was Withheld

An accused infringer must prove by clear and convincing evidence both: (1) that the applicant had a specific intent to deceive the USPTO; and (2) that the alleged withheld reference was but-for material to patentability of the claimed invention. "Intent and materiality are separate requirements. . . . [A] court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Therasense*, 99 USPQ2d at 1073. Specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id.* at 1072. "When there are multiple

---

[8]  Inequitable conduct is an equitable defense to be decided by this Court. *Therasense, Inc. v. Becton Dickinson & Co.*, 99 USPQ2d 1065, 1069 (Fed. Cir. 2011).

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS
07-CV-02185

reasonable inferences that [can] be drawn, intent to deceive cannot be found." *Id.* at 1073. "[T]he materiality required to establish inequitable conduct is but-for materiality" -- "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.*

## 2. There Is No Evidence Of A Specific Intent To Deceive Or That But-For Material Prior Art Was Withheld From The USPTO

There is no evidence, including none cited by MOVE (at 25; RUF91)), that inventor Tornetta had a specific intent to deceive the USPTO by allegedly withholding the WSoftware and document (JA-R1295-96), and that the WSoftware and document (JA-R1295-96) are but-for material references, because these references are not prior art. Inventor Tornetta testified that he understood his '989 claimed invention was fully disclosed in his parent '576 patent application, and therefore, was entitled to the priority filing date of that application on March 19, 1986. JA-R620-22; RUF92; *see also* Real's Position to MMV at 37-39. While inventor Tornetta testified that "I don't remember" having ever seen document (JA-R1295-96) (JA-R628), he understood that this document and the WSoftware were dated well after the priority filing date of the parent '576 application. Therefore, inventor Tornetta understood these references did not constitute prior art and he was not under a duty to disclose them to the USPTO. JA-R629-30; RUF93.[9]

Inventor Tornetta's understanding was confirmed during prosecution of the '989 patent when the Examiners "verified" that the '989 claims were entitled to priority rights under 35 U.S.C. §120 so as to have an effective filing date of March 19, 1986, and thereby remove two intervening references as prior art. *See* REAL's Position to MMV at 38; RUF94-97.

---

[9] As shown in RMIII at 10-13, the WSoftware and document (JA-R1295-96) are not but-for material references because they are not even prior art.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1   Thus, there is no evidence from which a reasonable fact finder could conclude
2   that the single most reasonable inference to be drawn from this record is that inventor
3   Tornetta had a specific intent to deceive the USPTO because the intervening
4   WSoftware and document (JA-R1295-96), which are not even prior art, were not
5   disclosed during prosecution of the '989 patent. Summary judgment that inventor
6   Tornetta did not commit inequitable conduct is appropriate. *Optium v. Emcore Corp.*,
7   603 F.3d 1313, 1321 (Fed. Cir. 2010) (affirming summary judgment of no inequitable
8   conduct because there was no showing of deceptive intent).

9   **B.    MOVE's Position**

10   The inequitable conduct prongs of materiality and intent are both questions of
11   fact.   *Esai Co. Ltd. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1360 (Fed. Cir. 2008).
12   Move has shown above that Workplace is but-for material as invalidating prior art
13   that would have precluded the patent from issuing had the PTO known of it.   *See*
14   *Therasense, Inc. v. Becton, Dickinson and Co.*, 99 U.S.P.Q.2d 1065, 1073 (Fed. Cir.
15   2011).   Further, there is evidence on which the Court can infer that Tornetta acted
16   with the intent to deceive the PTO by withholding Workplace (MX.13 at 215:10-13,
17   241:21-242:2).   Taken in the light most favorable to Move, there is a genuine issue
18   of fact sufficient to warrant denial of REAL's motion.

19   **IV.   MOVE'S MOTION FOR SUMMARY JUDGMENT OF**
20   **NONINFRINGEMENT**

21   **A.    MOVE's Position**

22   **1.    Move Is Entitled To Summary Judgment of Non-Infringement.**

23   The asserted method claims of the expired '989 patent include the steps of
24   "selecting" a first and second area (MX. 1, 15:33-50; MUF7).   Move is entitled to
25   summary judgment because the Federal Circuit has held that "[s]election takes place
26   when the user or a computer chooses an area having boundaries, not when the
27   computer updates certain display variables to reflect the selected area" and Move

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

1   never selected (chose) areas with boundaries on the accused Move websites.   Move
2   cannot as a matter of law be held liable for infringing the '989 patent because Move
3   did not perform all steps of the claimed method and exercised neither direction nor
4   control over users who may have performed those steps so as to render it liable for
5   joint infringement.   *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed.
6   Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

7   ### a.  Undisputed Facts Regarding Accused Move Websites

8   The Move websites are interactive sites that allowed users (e.g.,
9   sellers/buyers/renters) to look for available real estate using search criteria, such as
10  location, price, number of bedrooms, etc. (MX.29 ¶¶ 4-5; MUF8-9). Move neither
11  restricted nor controlled user access to the sites, nor did it require or direct users to
12  use any particular feature or search methodology (*Id* ¶9; MUF10-11).   Users did not
13  need special software to use the sites, nor did they "sign up" or submit personal
14  information to use the search features (*Id.* ¶13; MUF13-14).

15  REAL has accused two of the Move websites' search methodologies of
16  infringing the '989 patent: (1) the "Search by Map" function and (2) the "Search by
17  Zip Code" function (MX.34 at M1219-21; MX.11 at 77:7-22; MUF17).   With the
18  "Search by Map" methodology, a user selected an area by either (1) placing his mouse
19  over an area of the map and clicking or (2) clicking on an area named in a drop down
20  menu (MX.34 at M1225; MX.37 at M1391; MUF22-3); (MX.11 at 78:8-79:9;
21  MUF33) (REAL's expert conceding that clicking on a link "signifies the user's choice
22  to begin his search in that particular area").

23  In response to the user choosing an area in one of these two ways, the Move
24  system retrieved a map corresponding to the user's selection (MX.34 at M1225;
25  MX.43 at M1668-69; MUF24-25).     For example, after the user chose "Los Angeles
26  – Westside to Downtown," the Move system retrieved a map of that area, which was
27  displayed on the user's computer (MX.37 at M1392; MUF25) (displaying "Los

28

18

Angeles Area" map).   The user could then narrow his search to a smaller area, e.g., by clicking on a neighborhood in a drop-down menu (MX.34 at M1230-31; MX.37 at M1392; MUF26) (choosing "Beverly Hills").   With the "Search by Zip Code" methodology, the user could use a mouse to scroll a map "zoom bar" upward (MX.34 at M1238-42; MX.37 at M1397; MUF27-28).   In response, Move's server transmitted a pair of coordinates, *i.e.*, two points of a rectangle with each point represented by a latitude and longitude, to Microsoft, who sent a map of the area encompassed by the coordinates (MX.11 at 94:23-96:2; MUF39).   A second map was displayed if the user scrolled upward a second time (MX.37 at 1401; MUF28).

The parties agree that the Move system did not retrieve a map unless and until the user "clicked" on the map, a selection in a drop down menu or the zoom bar. (MX.11 at 80:21-83:5; MUF34-37).   There is also no dispute that once the user clicked on an area of a map, zoom bar, or drop-down menu, the Move system had no choice as to which map to retrieve, but had to retrieve the map corresponding to the click-on area. (MX.11 at 84:22-85:11; MUF34-37).   The only issue in dispute is the legal conclusion to be drawn from these undisputed facts.   REAL asserts that when the Move system retrieved a map in response to a user's click, the system "selected" or "chose" an area having boundaries.   Move, on the other hand, asserts that in response to the user's click, Move did not "choose" anything, since the only choice made was by the user who chose the area in which the system would search.

The dispute, therefore, is not, as REAL contends, an issue of claim construction.   Rather, the issue is whether under the Federal Circuit's construction, the actions of Move's computer constitute selection.   While the Federal Circuit determined that the selecting steps are capable of being performed by a user *or* a computer, as shown below, the undisputed facts show that in the Move system, the Move computer never selected areas having boundaries.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

### b.  Move Does Not Directly Infringe As a Matter of Law.

Method claims are not infringed by a system that is merely *capable* of performing the claimed steps.   Rather, "[m]ethod claims are only infringed when the claimed process is performed."  *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).   Moreover, a method claim requires that a single actor perform every claimed step.   Where claimed steps are performed by multiple actors, a defendant is not liable for infringement unless it exercises "control or direction" over the entire process such that each claimed step is attributable to the defendant. *Muniauction, Inc.,* 532 F.3d at 1330.   Move is entitled to summary judgment because it does not practice all steps of the claims or control the entire process.

Specifically, Move did not perform the steps of "selecting a first area having boundaries" (claim 1(c)) and "selecting a second area having boundaries" (claim 1(f)).   Under the Federal Circuit's construction, "[s]election takes place when the user or a computer *chooses* an area having boundaries, not when the computer updates certain display variables to reflect the selected area" (MX.36 at M1380; MUF30).   Move never "chose" first and second areas, as required by the Federal Circuit's construction. Rather, it retrieved maps of areas chosen for display by the user, i.e., it updated display variables to reflect the selected areas.   To the extent any one selected areas having boundaries, it was the user, not Move, who did so.[10]

To understand why Move's computer did not select first/second areas, this Court need only juxtapose the actions of Move's computers to situations in which

---

[10]  REAL contends the users did not select first/second areas and thus has not come forward with evidence that Move exerted "control or direction" over users in their selection such that Move is liable for joint infringement.   *Muniauction, Inc.,* 532 F.3d at 1330.   Nor can it (MUF43-45)(Summ. J. Order, *Keithley v. Homestore*, Case No. 3:03-cv-04447-SI, at 4-9 (N.D. Cal. Nov. 19, 2008) ("the Court finds that plaintiffs have not raised a triable issue of fact that Move 'controls or directs' the users such that it is appropriate to hold Move vicariously liable for the acts of the users").

20

computers do chose an area.   During oral argument at the Federal Circuit, Judge Moore, who authored the opinion, posited a situation in which a computer does in fact chose areas.   According to Judge Moore's hypothetical, a computer selects or chooses an area when a user inserts criteria, such as number of children and where the user works, and then lets "the computer completely figure out where would be good boundaries based on schools or other criteria" (MX.15 at M740; MUF40). [11] According to Judge Moore, "that would be a true computer selection" (*Id.*).

The accused Move websites simply did not select in the manner described by Judge Moore or in any other manner.   While the Move computers   retrieved maps corresponding to a user's chosen area, e.g., California, under no interpretation of the word did the Move computer "choose" the area or select the boundaries of the area, e.g., California.   Even if REAL were correct that the Move computer actually *chose* the *maps* associated with the first/second areas, as opposed to retrieving them, the asserted claims do not recite "selecting *a map* of the first/second area having boundaries." They recite "selecting a first/second area having boundaries" (MX.1 at 15:33-50).   To the extent areas with boundaries were selected, they were selected by the user only.   Logic dictates as much, since the purpose of the invention is to allow users to pick the area in which *they* wish to search (MX.1 Abstract ("the user begins with a region *where they are interested in acquiring property* . . . ."))   If the computer did the selecting, it would undermine the premise of the invention.

Merriam-Webster defines "choose" as "to select freely and after consideration" or "to decide" (MX.51; MUF42). It is undisputed that Move's computers did not "select freely" or "decide" the areas in which to search, nor did they have the capability to decide which map to retrieve.   REAL's expert conceded that "the same

---

[11]   An audio recording of the Oral Argument is accessible at http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1236/all.   The relevant discussion begins at the 14 minute mark.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

map" was retrieved "every time" the user clicked on a particular area, underscoring that the Move computer did not make choices (MX.11 at 88:9-89:4; MUF36-37). Rather than "choosing" areas, Move's computer simply "update[d] the display variables to reflect" the areas selected by the user, precisely what the Federal Circuit held is ***not*** selecting (MX.36 at M1380; MUF30, 38).

Specifically, in response to the user's selection of an area with boundaries, e.g., the city of Los Angeles or the zip code 90210, indicated by a click on Los Angeles on a map or in a drop down menu,[12] Move's computer executed the static computer code that retrieved the map associated with the clicked–on area[13] (MX.11 at 80:21-89:4; MUF36-37). As REAL's expert explained, Move's system was analogous to the system in the '989 patent where "world coordinates" were set (MX.11 at 94:23-96:2; MUF38). But the Federal Circuit made clear that such a process does *not* qualify as selecting: "to the extent that REAL argues that the selection of an area takes place when the computer sets the ***world coordinates*** equal to the boundaries of a selection cursor or rubberband window box, ***we do not agree***" (MX.36 at M1380; MUF29). Notably, REAL now tries to run from the very argument it asserted on appeal – that a computer "selects" an area when it updates world coordinates – an argument the

---

[12] Move's expert Dr. Strawn ***never*** agreed that under the current construction, a user does not select an area "having boundaries" by clicking on a map. His position was clear that "it was the user who selected the area of interest" (MX.43 at M1671; MX.12 at 57:23-58:3; MUF138). The testimony REAL cites concerns Strawn's *original* report, where he applied Move's *proposed* construction of "selecting": "position[ing] the boundaries around the area of interest" (MX.12 at 115:6-117:17, 120:6-121:12). Applying that construction, Strawn noted a user does not select an area with boundaries by clicking on a map. In any event, REAL's argument that the user does not select an area with boundaries in the accused websites simply proves that ***no one*** performs the selecting steps, entitling Move to summary judgment.

[13] The name of the code that retrieved the maps is "*Get*FAHMLSImageMap," the word Get implying that the code simply got or retrieved, not chose, a map corresponding with the user's selection (MX.43 at M1669; MUF139).

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

Federal Circuit squarely rejected (*Id*.).   REAL's present argument, however, consists of nothing more than a simple denial that Move's computer updated display variables to reflect the selected area.   But that is precisely what the computer did – the user selected a bounded area (implemented through a click), and in response, the display was updated with a new map. The Federal Circuit has already repudiated that activity as "selection of an area," and thus, Move cannot be liable for infringement as a matter of law. (*Id*.).

### B.    REAL's Position

MOVE's motion for summary judgment of noninfringement should be denied. MOVE's motion is premised entirely on the position that a third party human user, not MOVE's host computer, is performing the "selecting" steps of '989 Claim 1, by using a mouse to click on a point on a displayed map or neighborhood name in a drop down menu or plus/minus sign on a zoom bar. The Federal Circuit previously rejected MOVE's attempt to limit the selecting steps of '989 Claim 1 to the actions of a user, holding that selection can be performed by both users and computers. Nevertheless, MOVE is persisting in its improper attempt to narrow the claimed selecting steps to the actions of a user by now arguing that by clicking on a point on a map, name or zoom bar, a user is selecting an area, not MOVE's host computer.

MOVE once again advocates a flawed claim construction; this time by reading the word "boundaries" right out of the Federal Circuit's construction of '989 Claim 1 selecting Steps (c), "selecting a first area *having boundaries*. . .", and (f), "selecting a second area *having boundaries*. . . ." Even MOVE's infringement expert Professor Strawn disagrees with MOVE -- he repeatedly testified that a user's clicking on a point on a map, name or zoom bar does not constitute selecting an area having boundaries. MOVE's position is also flawed because MOVE is improperly attempting to read these additional clicking actions of a user into '989 Claim 1 to avoid infringement.

23

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

### 1.   MOVE Improperly Attempts To Read The Word "Boundaries" Out Of '989 Claim 1 "Selecting" Steps (c) And (f)

The Federal Circuit rejected MOVE's construction "that a human user is implicit in a claim reciting a method using a computer" and held that the "plain meaning of selecting does not foreclose automated selection, as both users and computers may select or choose." JA-R612. The Federal Circuit made it clear that the "plain language of the claim required only the choosing of a particular area *having boundaries*" and that "[s]election takes place when the user or a computer chooses an area *having boundaries*. . . ." JA-R611, 613.[14] Despite the Federal Circuit's construction, MOVE still attempts to limit the claimed selecting steps to the actions of a user by arguing that clicking on a point on a map, name or zoom bar, without providing any instructions regarding the boundaries of an area of interest, satisfies this claim limitation. Boundaries means "border or perimeter" of the first or second area. JA-R770-71. Clicking on a point, name or zoom bar provides no information regarding boundaries. Indeed, "a point is dimensionless." JA-R772-73. Thus, MOVE's assertion that selecting is satisfied by a user simply clicking on a point on a map, name or zoom bar would improperly read the word "boundaries" right out of '989 Claim Steps (c) and (f). *See In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1263 (Fed. Cir. 2007).

---

[14]   MOVE relies (MMIV at 20) on language in the Federal Circuit's opinion ". . . not when the computer updates certain display variables to reflect the selected area." JA-R613. However, in each of the infringing embodiments on MOVE's websites for October 2004 to July 16, 2008 ('989 Patent expiration), boundaries were not displayed on a map before a user clicked on a point on the map, name or zoom bar. MOVE's host computer responded to the click by selecting an area having boundaries (*i.e.*, a map having boundaries) and then displaying that map having boundaries. MOVE's host computer is not updating display variables to reflect a selected area, but rather, is selecting an area having boundaries *ab initio*. *See, e.g.*, REAL's Response to MUF17.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

2. **The Evidence Contradicts MOVE's Assertion That A Third Party Human User, Not MOVE's Host Computer, Is Performing '989 Claim 1 "Selecting" Steps (c) And (f)**

In his original expert report, which he prepared before the Federal Circuit issued its Opinion construing, *inter alia*, Claim 1 "selecting" Steps (c) and (f), MOVE's Professor Strawn stated that under MOVE's construction the "act of clicking a geographic area with a mouse or typing a zip code or a city/state" does not constitute selecting an area of interest. JA-R774-76. He was then asked if his opinion would be the same for each of these embodiments under the Federal Circuit's claim construction and each time he answered yes because no boundaries had been selected by a user: clicking on a point on a map (JA-R777, 784); typing in zip code (JA-R778-79); entering a neighborhood name (JA-R779-80); and clicking on a zoom bar (JA-R781-83).[15]

REAL's infringement expert Professor Shasha agreed that a user is not selecting a first or second area having boundaries as required by '989 Claim 1 Steps (c) and (f) by clicking on a point on a map, name or zoom bar. In all such embodiments, MOVE's host computer is responding to such click by selecting a first

---

[15]   MOVE refers (MMIV at 19) to map supplier "Microsoft, sent a map of the area encompassed by the [latitude/longitude] coordinates." Microsoft was contractually obligated to MOVE to supply the map. JA-R745.1, 919-26, 927-34, 935-58; *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("A party cannot avoid infringement. . . by contracting out steps of a patented process to another entity.") MOVE's description (at 5, n.4) of "GetFAHMLSImageMap", source code of its host computer, is incomplete. This code calls GETImageMapHTMLFromDot which encodes the actual coordinates of the map boundary into the map path name. MOVE's Professor Strawn did not recall the function of DotMap. JA-R784.1-784.2.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

or second area having boundaries (*i.e.*, a map having boundaries) and displaying that map having boundaries on a computer monitor. JA-R720-26, 729-30.[16]

## V. MOVE'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY FOR ON-SALE BAR

### A. MOVE's Position

#### 1. The '989 Patent is Invalid Under 35 U.S.C. Section 102(b).

More than one year before filing the application that issued as the '989 patent, inventor Mark Tornetta actively offered for sale and sold his "Workplace" system to the public. This activity constitutes an on-sale bar under 35 U.S.C. § 102(b), entitling Move to summary judgment that the '989 patent is invalid.

#### 2. Facts Regarding Mark Tornetta's Workplace Software.

As early as 1983, Tornetta began developing a computer system to identify available real estate property (MX.34 at M1322; MUF46). In 1986, he began writing the software for that system, which he named "Workplace" (MX.14 at 141:20-22; MUF47). On January 15, 1988, Tornetta entered into a license agreement with Synermation ("Agreement"), assigning his interest in Workplace and providing a license to the '989 patent (MX.17; MUF48, 50). The Agreement specifies that Tornetta had already developed the Workplace "data processing system

---

[16] MOVE asserts (MMIV at 20) that the "claimed steps are performed by multiple actors." To the contrary, the claim steps, including the selecting steps, are each performed by MOVE's host computer. MOVE's attempt to read additional steps, the clicking actions of a human user, into '989 Claim 1, is improper as a matter of law. First, there exists no method step in the asserted claims that requires clicking on a point on a map, name or zoom bar. It is improper to "read such limitations into the claims." *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1331 (Fed. Cir. 2010). Second, the law is clear that the additional step of a user clicking on a point on a map, name or zoom bar before the MOVE computer selects a first or second area having boundaries does not avoid infringement of '989 method Claim 1, which recites "comprising the steps of. . . ." *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999).

for the location of real estate properties" and further provides that Synermation wishes to "exploit commercially" the Workplace system (MX.17 at M803-04; MUF51).    Tornetta conceded that the version of Workplace sold to Synermation was capable of performing all limitations of Claim 1 of the '989 patent (MX.11 at 125:13-17; MX.13 at 224:14-229:11; 300:9-23; MUF68-72).

Under the Agreement, Synermation paid $5,000 dollars upfront, with additional payments thereafter (MX.17 at M812; MUF52).    In total, Synermation paid at least $10,000 dollars to use Workplace (MX.14 at 122:13-20; MUF53).    The Agreement required Tornetta to deliver the Workplace software to Synermation and included provisions relating to technical support, software documentation, quality assurance, feedback, and software maintenance (MX.17 at M806-08; MUF62-66).    In 1988, REAL prepared substantial marketing literature touting Workplace, including an article for the April 22, 1988 edition of the Times Herald called "Computer Software Finds the Right Spot" (MX.18; MX.19; MUF73).    The article not only described Workplace, but actually offered the public a chance to view a working demonstration in order to generate sales (MX.18; MUF92).

### 3.    The Sale of Workplace Constitutes an On-Sale Bar.

In *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, (1998), the Supreme Court held that the § 102(b) on-sale bar applies when more than one year before the filing of the patent application, i.e., the critical date: (1) a product or system that incorporates the patented features is the subject of a commercial offer for sale and (2) the invention is "ready for patenting."    *Id.* at 67.    An offer for sale under § 102(b) is a commercial offer if the other party could make a binding contract by simple acceptance. *Elan Corp., PLC v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004).    The "ready for patenting" prong is satisfied by proof that before the critical date ***either***: (a) there was a reduction to practice; ***or*** (b) there were drawings or descriptions "that were sufficiently specific to enable a person skilled in the art to practice the

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*                **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

invention" (a standard REAL completely ignores). *In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1373 (Fed. Cir. 2008), (citaton omitted) To be ready for patenting, these "drawings or other descriptions" need **not** be publically available.   *See Weatherchem Corp. v. J.L. Clark Inc.,* 163 F.3d 1326, 1331 (Fed. Cir. 1998) (invention "ready for patenting" when depicted on drawings days before offer to buyer); *Robotic Vision Sys., Inc. v. View Eng'g, Inc.* (*Robotic III*), 249 F.3d 1307, 1311 (Fed. Cir. 2001) (confidential description to co-worker satisfied *Pfaff*) Because the '989 patent is entitled to an April 24, 1989 filing date, Tornetta's pre-filing activities constitute an on-sale bar.

### a.  The '989 Patent Claims Have An April 24, 1989 Priority Date.

The '989 patent is a continuation-in-part (CIP) of the '576 patent, which was filed on March 19, 1986.   "Generally, a CIP adds new matter on which at least one claim relies for support."   *PowerOasis, Inc. v T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008).   If the claim of a CIP patent contains new matter not disclosed in the parent application, the claim is not entitled to the priority date of the parent patent.   *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999).   Whether a CIP patent is entitled to the priority date of its parent **is a matter of law**, appropriate for summary determination. *See Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994).

Claim 1 element (g) of the '989 patent plainly recites new matter: "displaying the second area and a plurality of points within the second area, each point representing the appropriate geographic location of an available real estate property." As shown below, the "display of points" limitation does not appear in the '576 parent or its accompanying Appendix.   Even REAL's expert conceded that displaying a plurality of points was new to the '989 patent:   "[the '989 patent] introduced two major changes compared to the '576 patent" one of which involved "a facility [that] . . . enabled the buyer to see points representing properties on the buyer's computer

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

screen" (MX.34 at M1305-06; MUF94-96).   This Court also recognized in its Claim Construction Order that the "presence of property points" on a map was a "new feature" in the '989 patent (MX.35 at M1364; MUF97).   Because the '989 patent claims include matter not disclosed in the '576 patent, they are not entitled to a priority date before the April 24, 1989 filing date of the '989 patent.

For claims to receive the earlier filing date of a parent application, the parent's written description ***must*** satisfy 35 U.S.C. § 112 as to the claims in the later patent. *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1158 (Fed. Cir. 1998); *Fiers v. Revel,* 984 F.2d 1164, 1169-70 (Fed. Cir. 1993).   That is, the "disclosure of the application relied upon [must] reasonably convey[] to the artisan that the inventor had possession at that time of the later claimed subject matter." *Wang Labs., Inc. v Toshiba Corp.,* 993 F.2d 858, 865 (Fed. Cir. 1993).   Where, as here, a claim limitation does not ***explicitly*** appear in the specification, the court must determine whether the language relied upon is the "legal equivalent" of the limitation. *See e.g., Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997).   To be "the legal equivalent of the claim language," it must be found that the "***necessary and only reasonable construction*** to be given the disclosure" in the parent "is the same as the construction which such person would give the language in the claims of the later application." *Wagoner v. Barger*, 463 F.2d 1377, 1379-80 (C.C.P.A. 1972) (citation omitted), superseded by statute on other grounds, *Kubota v. Shibuya,* 999 F.2d 517, 522 (Fed. Cir. 1993); *Tronzo*, 156 F.3d at 1159 (to satisfy written description, "the missing descriptive matter must *necessarily* be present in the [original] application's specification . . ."). REAL seeks to satisfy this standard by misstating (1) the contents of an Appendix submitted with the '576 patent, and (2) the findings of the PTO.   But REAL cannot create a disputed issue of fact by mischaracterizing evidence, which absent REAL's distortions, is undisputed.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

First, REAL's expert, Dr. Shasha, opined that the '576 patent discloses the display of a plurality of points in connection with the seller's creation of a "listing" file, relying on the Appendix to prove such disclosure.   Specifically, Shasha opined that when a seller pinpoints the location of the property for sale by moving a "cross-hair cursor" to that location, the "crosshair cursor creates a point displayed on the map that represents an appropriate geographic location of a property" (MX.34 at M1315; MUF98-99).   Shasha then opined that the flow charts in the Appendix teach "a plurality of such points arises" if the seller "enters several listings." *Id.*   But even if the Appendix could be used to satisfy 35 U.S.C. § 112 (which, as a matter of law, it can not (MX.42 at M1646-47; MUF140)), there is ***nothing*** in the '576 patent or the Appendix to indicate that a plurality of points appeared if a seller entered several listings.   That conclusion is based solely on Shasha's erroneous interpretation of the flow charts in the Appendix, which, according to Move's expert Bacastow, establish that the screen, including any points thereon, is "cleared" before a second listing is entered, thereby ***preventing*** more than one point from being displayed at one time. Bacastow further testified that "there is no provision [in the Appendix flow charts] to return or loop back" to create a second listing file "before clearing the screen" (MX.40 at M1582-84; MX.4 at 177:25-188:22; MUF100-105). Bacastow's testimony establishes that there are at least two interpretations of the '576 patent's disclosure, and thus Shasha's interpretation of the Appendix flow charts is not, as it must be, the "necessary and only reasonable construction to be given the disclosure."   *Wagoner*, 463 F.2d at 1379-80.   Accordingly, instead of precluding summary judgment, the dispute between Drs. Shasha and Bacastow establishes that summary judgment is *appropriate*.[17]

_____

[17]  The Court should give no weight to the inadmissible program cited in Section V(B)(3) of REAL's brief.   Not only was this program created by REALs' lawyer Lawrence Husick over a year ***after*** discovery closed and then sprung on Move at the

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1     Nor is there evidence that the PTO made a priority determination with respect

2 to the '989 patent.   REAL bases that assertion on a single statement made by the

3 Examiner during prosecution that certain art is "relevant to applicant's disclosure, but

4 does not qualify as prior art." The referenced art consisted of high level abstracts that

5 did not discuss the elements of the '989 claims, including aspects REAL contended

6 were novel (MX.42 at 1643-46; MUF141).   In view thereof, no reasonable jury

7 could find this statement to constitute a priority determination.   *See In re NTP, Inc.*,

8 No. 2010-1277, 2011 WL 3250466 (Fed. Cir. Aug. 1, 2011) ("Deciding whether a

9 patent application satisfies §112 requires a ***distinct and separate analysis*** . . ." and no

10 priority determination made where examiner did not make "affirmative statement that

11 the claims of the [patent] satisfied §112").

12     Even if the Examiner did make a priority determination, Move is still entitled to

13 summary judgment, because any such finding is not binding on this Court and can be

14 overcome with clear and convincing evidence.   *See. e.g., Bone Care Int'l., LLC. v*

15 *Pentach Pharma., Inc.*, 741 F. Supp.2d 865, 873 (N.D. Ill. 2011) (while "[d]eference

16 is accorded to the examiner's finding," a party "challenging entitlement to [a] priority

17 date can overcome the presumption," upon "a showing of clear and convincing

18 evidence.").   Here, the clear and convincing evidence shows there is no plurality of

19 points displayed in the '576 patent.   Because the '989 patent is entitled to a filing

20 date of April 24, 1989, Tornetta's pre-filing activities render the '989 patent invalid.

21    **b.  The Agreement Constitutes a Commercial Sale.**

22     The undisputed evidence shows that the Synermation Agreement constitutes a

23 commercial sale for purposes of § 102(b) because (1) it is a binding, **non-confidential**

24 ─────────────────────
**completion** of Dr. Shasha's July 2011 deposition, but it does not follow the logic of

25 the flow charts in the Appendix and consists of nothing more than a five-step program
designed by REAL's lawyer specifically to plot multiple points (MX.4 at 205:8-

26 207:16; MUF145 ("they cherry-picked a part of it without putting this into the context

27 of the flow with diagram A of the Appendix")).

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

contract executed more than a year before the critical date and (2) as Tornetta himself testified, the Workplace system that is the subject of the Agreement performed all elements of the '989 patent claims.   Indeed, the Agreement evidences that Tornetta did not just *offer* to sell Workplace; he in fact sold/licensed it to Synermation, which paid at least ten thousand dollars for it (MX.14 at 122:13-20; MUF53).   Tornetta testified that he provided Workplace to Synermation before the April 22, 1988, Times Herald article and that even the first version of Workplace developed before the Agreement could perform all steps of the '989 patent Claim 1 (MX.13 at 224:8-229:11; 300:9-23; MUF68-72).

REAL argues the Agreement does not constitute a commercial sale because (1) it required the Workplace software to remain confidential and (2) the software was still under development (*See* Sections V(B)(1)&(2)).   The evidence supports neither contention.   While the Agreement required Synermation to keep the *source code* confidential, it specifically acknowledged Synermation's desire to "exploit commercially" the Workplace software and granted Synermation the right to "make, use, sell, lease, reproduce, and distribute" the software (MX.17 at M803-11, M823; MUF54-61). Tornetta admitted that both he and Synermation gave free copies of the software to anyone who asked for it (MX.13 at 53:4-54:24, 234:7-24; MUF142).

Moreover, when REAL says the software was not fully functional, it means the *networking* aspect of the system did not function (MX.52 at 190:21-24, 196:3-7, 203:15-204:3).   But even without that functionality, the software could perform all steps of the '989 claims, since there is no networking limitation in the claims (MX.13 at 224:8-229:11; MX.1 at M22; MUF68-72, 75-82).   And, the fact that the software was still being developed is legally irrelevant, as prior art need not be fully developed to invalidate under 102(b).   *In re Cygnus Telecomm. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1355 (Fed. Cir. 2008) ("sales relating to use of a system that would not have worked on commercial scale but embodied claims of patent . . . could constitute

1  invalidating commercial sale, *regardless of state of development* of larger system that
2  would work on commercial scale"); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299
3  F.3d 1336, 1352 (Fed. Cir. 2002) (development status not to be considered in on sale
4  bar analysis); *General. Elec. Co. v. United States*, 654 F.2d 55, 60 (Ct. Cl. 1981)
5  (device sold subject to testing does not negate on-sale bar).

6  ### c.  The Invention was Ready for Patenting.

7  *Pfaff's* second prong is also satisfied.   The Agreement explicitly states that
8  Tornetta's system, *i.e.*, Workplace, *had been developed* by January 1988 (MX.17 at
9  M803; MUF51).   Thus, the Agreement itself is evidence that the invention was
10  reduced to practice pre-critical date.   Moreover, in disputing that Workplace was
11  developed pre-critical date, REAL not only focuses on the system's irrelevant
12  networking failures (*see supra*), but it ignores that the "ready for patenting" prong can
13  be satisfied with a pre-critical date enabling disclosure even absent a reduction to
14  practice. Thus, even assuming Workplace was not fully developed at the time of
15  Agreement, the ready for patenting prong is satisfied by the April 22, 1988, Times
16  Herald article because the article is a pre-critical date enabling description of the
17  invention.   The article teaches and enables every element of the '989 patent claims,
18  including (a) creating a database, (b) displaying a map, (c) selecting a first area
19  having boundaries, (d) zooming to display a higher level of detail, (e) selecting a
20  second area having boundaries, (f) displaying the second area and a plurality of points
21  representing the location of real estate properties, and (g) identifying the properties
22  within a database (MX18; MX.5 at 66:17-70:14; MX.39 at M1553-1562; MUF83-91).
23  *See Pfaff*, 525 U.S. at 68 ("fully disclos[ing]" drawings satisfy the second prong of the
24  test).   REAL has not offered any evidence to the contrary.

25

26

27

28

Instead, REAL focuses on a new theory – one articulated for the first time late in this case[18] – that the Times Herald article was never published.   It has done so notwithstanding the prior sworn admissions of both the inventor and REAL's co-founder that the article was published (MX.30; MX.13 at 235:10-238:4; MUF74-77, 136).   Even if REAL were correct, however, the article **need not have been published to satisfy the on-sale bar**, because, as established above, the description contained within the article satisfies the "ready for patenting" prong as an enabling disclosure.   *See Weatherchem,* 163 F.3d at 1331; *Robotic III*, 249 F.3d at 1311 (confidential description sufficient to satisfy second prong of *Pfaff*).

## B.   REAL's Position

MOVE's motion for summary judgment of patent invalidity, based on the assertion that a License Agreement signed by inventor Tornetta for development of Workplace constituted an on-sale bar, should be denied. MOVE does not mention that the 01/15/88 License Agreement between Realpro and Synermation (JA-R1267-93) was a confidential technology agreement to develop the Workplace system which was never completed and terminated by Synermation because the system failed. Under *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), there is no on-sale bar because no working embodiment of the '989 claimed invention was ever developed under the agreement before its termination.

The WSoftware being developed by inventor Tornetta under the agreement did not include a database of available real estate properties, and was incapable of displaying or identifying available properties. Moreover, the Workplace Network tested by Synermation in September 1988 failed, causing Synermation to terminate the agreement in late 1988 before the first working embodiment of the '989 claimed

---

[18]   In *Real Estate Alliance, Ltd. v. Sarkisian*, C.A. No. 05-CV-3573 (E.D. PA), REAL conceded the article was published, only to change its position here after recognizing the on-sale bar issue (MX.30; MUF74-77).

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*        **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

invention was reduced to practice a month before the '989 application was filed on April 24, 1989. Through the duration of the License Agreement, WSoftware was maintained in confidence pursuant to the terms of the agreement. Thus, the License Agreement was not an offer for commercial sale under *Pfaff* and the WSoftware being developed in confidence under the agreement is not even prior art.

In addition, the License Agreement and WSoftware are not prior art on the separate ground that they are dated well after the March 19, 1986 priority filing date of the parent '576 patent application to which the asserted '989 Claims are entitled under 35 U.S.C. §120. MOVE never mentions that an Appendix was filed as part of the original parent '576 patent application, including Flow Diagrams A, Q, R, S and T that support the "plurality of points" limitation in Claim 1 Step (g), and therefore the '989 Claims are entitled to the '576 priority filing date which eliminates the License Agreement and WSoftware as prior art. MOVE also does not mention that the USPTO verified that the '989 Patent claims are entitled to the '576 priority filing date.

### 1. The WSoftware Being Developed Under The License Agreement Was Maintained In Confidence And Is Not Prior Art

Under the terms of the License Agreement (¶¶2.8, 5.5), the WSoftware being developed by inventor Tornetta was held "in confidence" through its termination, and was not completed and known to work for its intended purpose, and therefore is not prior art. *See* RMII, *supra* at 10-11.[19]

---

[19]   MOVE relies (MMV at 27) on document (JA-R1295-96), which it refers to as the "Times Herald article," as a publication of Workplace. To the contrary, the undisputed evidence is that this document was never published and/or made publicly accessible or available in a supplement of that newspaper. Moreover, as of the April 22, 1988 date of this document, inventor Tornetta had not delivered WSoftware to Synermation and no working embodiments of WSoftware, including a database containing data representing two or more available properties, and capable of displaying and identifying the available properties, even existed -- the display of

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

## 2. The License Agreement Does Not Constitute A Commercial Sale

An on-sale bar under 35 U.S.C. §102(b) applies when a product or system that embodies the claimed invention was *both* the subject of a commercial sale and ready for patenting before the critical date. *Pfaff*, 525 U.S. at 67. The invention is ready for patenting, *inter alia*, if there is "'proof of reduction to practice before the critical date.'" *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1361 (Fed. Cir. 2010). With respect to the WSoftware being developed in confidence under the License Agreement, both of these elements are *not* satisfied.

At the time of the 01/15/88 License Agreement, no Workplace system had been developed -- Synermation wanted inventor Tornetta to develop a system. JA-R651. The WSoftware provided by inventor Tornetta to Synermation under the License Agreement having a creation date of May 23, 1988, did not include a database and was not capable of displaying or identifying available properties. The WSourcecode developed by inventor Tornetta did not include routines or language for creating a database and did not have access to identify the available properties. Synermation subsequently terminated the License Agreement by the end of 1988 because their testing of the Workplace Network failed in September 1988, before the first working version of the claimed invention was completed a month before the '989 patent application was filed. *See* RMI at 4-5 and RMII at 10-11. Thus, there was no sale of a commercial embodiment of the '989 claimed invention under *Pfaff*.[20]

MOVE refers (MMV at 27) to the testimony of inventor Tornetta (JA-R623-27) that Workplace Software could perform all the steps of '989 Claim 1. However,

---

property points in a figure does not suggest the existence of a database of available real estate properties (JA-R738). *See* RMI at 4-5 and RMII at 10-13.

[20] MOVE cites (MMV at 27) to payments of "at least $10,000 for the right to use Workplace." The only payments made under the License Agreement were a retainer of $5,000 (¶4.1a) and consulting fees (¶4.1(j)), for the confidential development of Workplace. JA-R1276, 1278.

36

inventor Tornetta never identified the version of the Workplace Software he was referring to or gave a date as to when this version could perform all the steps of '989 Claim 1. He also did not testify that this version of the Workplace Software was disclosed to Synermation prior to termination of the License Agreement at the end of 1988 (JA-R623-27, 2952), but did testify that a working version of the '989 claimed invention was only completed a month before the '989 application was filed (JA-R649-50, 652-53, 665-66).

### 3.   The Evidence Contradicts MOVE's Assertion That The '989 Patent Claims Are Not Entitled To The '576 Priority Filing Date

The overwhelming evidence establishes that the asserted '989 Patent Claims are entitled to the March 19, 1986 priority filing date of the parent '576 Patent application, and therefore that the 01/15/88 License Agreement and WSoftware being developed under that agreement are not prior art. Originally filed '989 application 07/342,577 included a claim of priority to the earlier-filed parent '576 application 06/841,515 under 35 U.S.C. §120. JA-R495. Confirmation of the claim of priority is in the USPTO's "PALM III Application File Data Coding Sheet" contained in the '989 file history. JA-R603. The Examiner on June 21, 1990 in the first Office Action of the '989 application stated: "The present application has been filed as a continuation-in-part of an earlier application, serial number 08/841,515. As such, the declaration of the present application must include a statement identifying it as a CIP, and giving the serial number and filing date of the earlier 06/841,515 application." JA-R562. On March 11, 1991, inventor Tornetta responded by filing a declaration, claiming such benefit. JA-R597-98.

References cited during prosecution of the '989 Patent *required* the USPTO to make a priority determination described in MPEP §201.08. JA-R2223. The Examiners stated, in a Notice of Allowability (January 29, 1991) at ¶3, "The newly-cited art is considered relevant to applicant's disclosure, *but does not qualify as prior art*." JA-

R577. The "newly-cited art" to which the Examiners referred consisted of seven references, including two intervening references "R" dated "9/1/86" and "S" dated "Dec. 1988," which fall between the '576 and '989 application dates, and five additional references dated after the '989 application filing date. That the references were considered by the Examiners is reflected by their hand-written check marks. JA-R581. Consideration of these intervening references by the Examiners and the finding that they do not qualify as prior art confirms that the USPTO affirmatively determined that the '989 Patent was entitled the priority filing date of March 19, 1986. This priority determination was "verified" by the Examiner on the front cover of the file jacket for the '989 Patent. JA-R468, 712-13, 801-04, 794-95, 576-82.[21]

MOVE cannot overcome the USPTO's priority determination by clear and convincing evidence. MOVE does not mention that the Appendix (JA-R1939-2168) was filed *as an integral part of the original '576 application filed* on March 19, 1986, and is referenced in the text at '576:Col. 14, lns. 31-34. JA-R28, 805-06, 791-93, 827. Without mentioning the Appendix, MOVE contends that the asserted '989 Patent Claims are not entitled to the priority filing date of the parent '576 application for the sole reason that the element "plurality of points" in '989 Claim 1 Step (g) is not supported by the originally filed '576 application, asserting that the originally filed '576 application including the Appendix only allow for the display of a single point. JA-R825-26, 828. However, the record conclusively establishes that Appendix Flow Diagrams A, Q, R, S and T teach displaying a plurality of points. JA-R2169, 2185-88, 619-22, 666.1-666.2, 734, 736-37, 739-45, 852-59, 1250-55, 1825. Moreover, a

---

[21]  Once the USPTO determined that the '989 claims were entitled to the March 19, 1986 filing date of the '576 application, the claims, including Claim Step 1(g), were determined to have support under 35 U.S.C. §112 in the earlier-filed '576 application. *See* 35 U.S.C. §120; JA-R2223 (MPEP §201.08), 2225 (MPEP §706.03); *In re Wertheim*, 541 F.2d 257, 265 (CCPA 1979) ("burden of showing that the claimed invention is not described in the specification rests on the PTO.").

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*          **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

program supervised by REAL's expert Professor Shasha was run following the teachings of Flow Diagrams A, Q, R, S and T and the resulting screenshots demonstrate the display of a plurality of points. JA-R739-45, 909-10, 911-18. MOVE's position (MMV at 30) that the screen would be cleared after the display of a single point is contrary to the teachings of Flow Diagrams A, Q, R, S and T which do not include a clear screen block (JA-R854-55), the '576 Patent which teaches a "plurality of property listings" (col. 7, ln. 21) and to "save" a displayed point (col. 4, ln. 42) and not clear the screen (JA-R23, 25, 28, 856-57, 1825) and that it was known at the time how to edit text without clearing the displayed screen (JA-R858-59, 1250-55). *See also* REAL's Response to MUF101.

## VI.   MOVE'S MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. §112

### A.   <u>MOVE's Position</u>

#### 1.   The Claims of the '989 Patent Are Invalid Under § 112

The asserted claims are invalid under § 112 because they are broader in scope than the invention described and enabled in the specification of the '989 patent.   The specification discloses a method for performing on-line real-estate searches in which a user (1) chooses a geographic area of interest and (2) identifies non-geographic criteria (*e.g.,* price range, number of bedrooms, etc.), thereby creating a search file that is sent to a host computer to identify qualified real estate within the user's selected area (MX.1 at 9:63-10:51, 1:46-53, 2:26-29, 2:24-55, 6:42-44; MUF106-11). As REAL's experts concede, the patents describe only a single method for selecting the geographic area in which a search is to be conducted – a technique known as rubberbanding – where the user positions a "selector," in the form of a rubberband window box/circle, over the area of the map in which he wishes to search for property (MX.1 at 1:46-2:19, 9:34-65; MX.6 at 286:22-287:25; MX.11 at 73:3-76:7; MUF112-13).   No other geographic selection technique is described.   After positioning and

sizing the "selector," the user provides non-geographic search criteria: "having entered the search location boundary, the user is then prompted for the numerical range data entries," such as "ranges for price, lot size (in minmum/maximum indicators), number of bedrooms, and other numerical data" (MX.1 at 9:66-10:6; MUF107).   Then "a series of menus are displayed so that the user may select one or several selections" for criteria such as "home style, sewage system, roof type, and other such housing elements" (MX.1 at 10:46-53; MUF108). Thus, the '989 patent teaches: (1) the search location boundary is selected via rubberbanding, (2) the user enters "numerical data," and (3) menus are displayed for choosing "housing elements."   This method is not simply a "preferred embodiment," but is described throughout the patent as *the* invention. *See* '989 patent's Abstract, Figures 3A&B, and the theory of the invention (MX.1 at 1:30-6:62).

Because the '989 patent only discloses the rubberbanding method for selecting areas, Move proposed to construe the claimed "selecting" steps to require rubberbanding (MX.48 at M1800, M1805; MUF114).   While the district court agreed the selecting steps were so limited, the Federal Circuit reversed, finding no "clear disavowal" of other selection techniques and holding that "[s]election takes place when the user or a computer chooses an area having boundaries . . ." (MX.35 at M1368; MX.36 at M1379-80; MUF115-18).   That is, the Federal Circuit construed selecting generically to cover the selection of areas via *any* manner.

## 2. The '989 Patent Is Invalid for Lack of Written Description.

The written description requirement stems from 35 U.S.C. §112, which requires a patent's specification to "contain a written description of the invention, and of the manner and process of making it . . .".   While "[c]ompliance with the written description requirement is a question of fact," it "is amenable to summary judgment where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis*, 522 F.3d at 1307.   To satisfy the requirement, the specification "must

1  describe the invention sufficiently to convey to a person of skill in the art that the

2  patentee had possession of the claimed invention at the time of the application, *i.e.*

3  that the patentee invented what is claimed."   *LizardTech, Inc. v. Earth Res. Mapping,*

4  *Inc.*, 424 F3d. 1336, 1345 (Fed. Cir. 2005).   The "purpose of the written description

5  requirement is to prevent an applicant from later asserting that he invented that which

6  he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313m 1330 (Fed.

7  Cir. 2003).   Therefore, "claims may be no broader than the supporting disclosure . . .

8  ."   *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

9  Rather, a patent's claims must "be encompassed within [the applicant's] original

10  creation." *Amgen*, 314 F.3d at 1330 (citation omitted.)

11      The Federal Circuit has repeatedly invalidated claims that are broader in scope

12  than the invention disclosed in the specification.   *See, e.g.*, *LizardTech*, 424 F.3d at

13  1345.   In *LizardTech*, the claims were directed to a DWT-based compression process

14  that created a seamless DWT of an image.   While the specification described only

15  one method for creating a seamless DWT – maintaining "updated sums" of DWT

16  coefficients – claim 21 lacked that limitation, claiming "taking a seamless DWT

17  generically." *Id.* at 1344.

18      In holding the claims invalid for lack of written description, the Court stated:

19          The trouble with allowing claim 21 to cover all ways of performing DWT-

20          based compression processes that lead to a seamless DWT is that ***there is no***

21          ***support for such a broad claim in the specification.   The specification***

22          ***provides only a single way of creating a seamless DWT*** . . . ***There is no***

23          ***evidence that the specification contemplates a more generic way of***

24          ***creating a seamless array of DWT coefficients***.

25  *Id*. at 1344.   The Court concluded that describing a single process in the

26  specification is insufficient to support broad, generic claims not limited to that

27  process, because it would "lead to sweeping, overbroad claims because it would

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

1  entitle an inventor to a claim scope far greater than what a person of skill in the art

2  would understand the inventor to possess or . . . ."   *Id.* at 1346.   For that reason, the

3  Court held that a "patentee cannot always satisfy the requirements of section 112, in

4  supporting expansive claim language, merely by clearly describing one embodiment

5  of the thing claimed."   *Id.*   *See also Tronzo*, 156 F.3d at 1159 (claims that recite

6  "the shape of the [patented] cups generically" held invalid because "there was nothing

7  in the patent's specification 'to suggest that shapes other than conical are necessarily a

8  part of the disclosure'"); *Gentry Gallery,* 134 F.3d at 1480 (invalidating claims as

9  "broader than the supporting disclosure").

10      Like the patent in *LizardTech*, the '989 patent "provides only a single way" to

11  perform the selecting steps – rubberbanding – yet the claims recite selecting

12  generically.   Indeed, as construed, the selecting steps are broad enough to encompass

13  selecting without using rubberbanding (MX.36 at M1380; MX.34 at M1225-26;

14  MUF117-18).   However, as in *LizardTech*, there "is no evidence that the

15  specification contemplates a more generic way of" selecting areas other than the

16  rubberbanding technique taught in the specification.   *LizardTech*, 424 F.3d at 1344.

17      Even REAL's experts concede that the '989 patent does not describe ways to

18  select areas without rubberbanding (MX.6 at 280:22-287:12; MX.11 at 73:3-76:7;

19  MUF119-20)).   Instead, they argue that a person of skill would find it "obvious" to

20  come up with other ways to select geographic areas, including by using tools

21  discussed in the patent (e.g. numerical selection, menu selection):   "Are [other

22  selection methods] specifically mentioned? I think I've said five times that they're not

23  specifically mentioned, but they would be *obvious* to one of ordinary skill in the

24  art."[22]   (MX.6 at 290:2-291:8; 284:23-287:12; MUF121).   However, a "description

25

26  ────────────────

[22]   REAL's expert also opined that the '989 patent explicitly discloses other ways to
select in the passage that states the "selector" can be positioned with "manipulator

27  keys" *or* a "mouse, light pen or other known device" (MX.38, M1464; MX.1 at 9:24-

28

1    that merely renders the invention obvious does not satisfy the [written description]

2    requirement." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir.

3    2010).   Moreover, none of the tools discussed in the patent are *ever* described as

4    being used to select geographic areas.   *See supra* Section III.   Rather, as REAL's

5    experts admit, they are discussed *only* with identifying *non-geographic property*

6    *characteristics* (e.g. price range) (MX.11 at 195:1-18; MX.6 at 286:22-287:12; MX.1

7    at 9:66-10:6; MUF107, 119, 144).   Thus, the testimony of REAL's expert that

8    skilled artisans would know these tools could also be used to select geographic areas

9    is insufficient to satisfy the written description requirement. *Martin v. Mayer*, 823

10   F.2d 500, 505 (Fed. Cir. 1987) (written description requirement is "not a question of

11   whether one skilled in the art might be able to construct the patentee's device from the

12   teachings of the disclosure . . . . [I]t is a question whether the application necessarily

13   discloses that particular device"); *PowerOasis* at 1310 (failure to "show anywhere in

14   the Original Application where a customer interface is located on a customer's

15   laptop," rendered expert testimony that skilled artisans would know the interface

16   could also be on laptop insufficient to raise disputed issue of fact because it did not

17   establish that "use of a customer laptop as the customer interface is necessarily

18   disclosed by the Original Application.   At best, this is a statement that it would be

19   obvious to substitute a customer laptop for the user interface disclosed on the vending

20   machine.   Obviousness is simply not enough; the subject matter *must be disclosed to*

21   establish possession.").

22        In opposing Move's §112 motion, REAL relies heavily on the Federal Circuit's

23   finding that the '989 patent does not "disavow" selection via other methods. *See*

24   Section VI(B).   The Federal Circuit, however, has made clear that when analyzing

25   the written description requirement, "the question is not whether the patentee . . .

26   ───────────────────
     33; MUF122).   This is a mischaracterization, as this passage reflects various ways to

27   perform *rubberbanding*, not ways to select areas *without* rubberbanding.

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

1  'disclaimed the scope of the [] patent; the question is whether the [] specification

2  sufficiently describes the later-claimed subject matter . . . ." *Anascape, Ltd. v.*

3  *Nintendo of Am. Inc.*, 601 F.3d 1333, 1339 (Fed. Cir.).   It further noted that while a

4  "patentee is not deemed to disclaim every variant that it does not mention . . . neither

5  is a patentee presumed to support variants that are not described." *Id*.   Thus, the fact

6  that the patent does not "disclaim" other geographic selection methods does not mean

7  such methods are sufficiently described to satisfy the written description requirement.

8  And, as discussed above, in this case they are not.

9      In short, there is no evidence from which a reasonable jury could find that the

10  '989 patent specification demonstrates to a skilled artisan that, at the time of his

11  invention, the inventor had possession of an invention involving selecting first and

12  second areas without the use of rubberbanding.   Move is thus entitled to summary

13  judgment that the '989 patent claims are invalid for lack of written description.

14          **3.    The '989 Patent Claims Are Invalid for Lack of Enablement**

15      Move is also entitled to summary judgment that the'989 patent claims are not

16  enabled.   Enablement is a question of law. *Leibel-Flarsheim Co. v. Medrad, Inc.*,

17  481 F.3d 1371, 1377 (Fed. Cir. 2007). Enablement is satisfied "when one skilled in

18  the art, after reading the specification, could practice the claimed invention without

19  undue experimentation."   *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir.

20  2008).   It is not sufficient for the specification to enable only a single embodiment of

21  the invention.   Rather, the "specification must teach those of skill in the art 'how to

22  make and how to use the invention *as broadly as it is claimed*.'" *In re Goodman*, 11

23  F.3d 1046, 1050 (Fed. Cir. 1993).   That is, "the specification must enable the full

24  scope of the claims . . . ." *Auto. Techs. Int'l v. BMW of N. Am., Inc.*, 501 F.3d 1274,

25  1281 (Fed. Cir. 2007); *National Recovery Techs., Inc. v. Magnetic Separation Sys.,*

26  *Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999) ("The scope of the claims must be less

27  than or equal to the scope of the enablement.").

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1       The Federal Circuit has frequently invalidated claims for being broader in

2   scope than what the specification enabled.   In *Automotive Technologies,* 501 F.3d at

3   1280, the Federal Circuit held invalid for lack of enablement claims that were

4   construed to include both mechanical and electronic side-impact sensors because the

5   "specification failed to enable electronic sensors for sensing side impacts."   Noting

6   that the "full scope of the claims included both types of sensors," the Court found that

7   although the specification discussed electronic sensors, it "failed to provide sufficient

8   details to teach a person of ordinary skill in the art how to make and use an electronic

9   sensor."   *Id.*   It therefore granted summary judgment of invalidity, finding no issue

10   of fact created by expert testimony that because one of skill "would know how to

11   adapt then-existing technology to create an electronic side impact sensor," undue

12   experimentation was not required. *Id.* at 1284.

13       In so doing, the Court explicitly rejected the plaintiff's argument that the

14   knowledge of a skilled artisan can supply the missing information: "although the

15   knowledge of one skilled in the art is indeed relevant, the novel aspect of an invention

16   must be enabled ***in the patent***." *Id.* at 1283.   The Court further held that where, as

17   here, "there is no disclosure of any specific starting material or of any of the

18   conditions under which a process can be carried out, undue experimentation is

19   required." *Id.* at 1283-84.   Similarly, in *Liebel-Flarsheim*, the Court construed "the

20   full scope of the claimed inventions [to] include injectors with and without a pressure

21   jacket."   481 F.3d at 1378-79.   Finding that "[n]owhere does the specification

22   describe an injector with a disposable syringe without a pressure jacket," the Court

23   held the claims invalid because the specification did not enable the *full scope* of the

24   claims.   *Id.* at 1379. In rendering its decision, the Court noted:

25       The irony of this situation is that Liebel successfully pressed to have its claims

26       include a jacketless system, but having won that battle, it then had to show that

27

28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

1    such a claim was fully enabled, a challenge it could not meet.    The motto

2    'beware of what one asks for,' might be applicable here.

3    *Id.* at 1380.    *Dreamworks*, 516 F.3d at 1000 (claims construed as "broad enough to

4    cover both movies and video games" held invalid because they "must enable both

5    embodiments," but only enabled video games).

6        As in *Liebel-Flarsheim*, REAL "successfully pressed to have its claims"

7    construed broadly to include selecting areas in a myriad of ways, "but, having won

8    that battle, it then had to show that such claim was fully enabled."    *Liebel-Flarsheim*

9    at 1380.    Also as in *Liebel-Flarsheim*, nothing in the specification teaches a skilled

10   artisan how to make and use (without undue experimentation) a real estate location

11   system in which areas are selected through means other than rubberbanding.

12   REAL's own experts admit no such techniques are mentioned (MX.6 at 286:22-

13   287:12; MX.11 at 73:3-76:7; MUF119-20).    The conclusory statement of REAL's

14   expert that it would take only "basic experimentation" to figure out how to make and

15   use an invention with features discussed nowhere in the patent is insufficient as a

16   matter of law to raise a disputed issue of fact regarding enablement. *Auto Techs.*, 501

17   F.3d at 1284-85 (expert testimony that undue experimentation was not needed

18   because skilled artisans would know how to adapt existing technology to create the

19   claimed invention insufficient to create a genuine issue of fact as to enablement.)

20       Because the patent provides no guidance on selecting areas without

21   rubberbanding, the claims are invalid for lack of enablement.    *See In re Wands*, 858

22   F.2d 731, 737 (Fed. Cir. 1988) (specification must provide "guidance with respect to

23   the direction in which the experimentation should proceed.")

24       **B.    REAL's Position**

25       MOVE's motion for summary judgment of patent invalidity under the written

26   description and enablement requirements of 35 U.S.C. §112, ¶1, should be denied.

27   MOVE's assertion (MMVI at 42) that the '989 Patent specification only discloses the

28

rubberbanding method for selecting areas having boundaries is contrary to the Federal Circuit's holdings that: the '989 "specification does not clearly disavow automated selection"; "[s]election takes place when the user or a computer chooses an area having boundaries. . .."; and "it certainly does not require that the user utilize any particular tool (such as a selection cursor or rubberband) to create boundaries." JA-R611, 613.

The Federal Circuit's construction is supported by the teachings in the '989 Patent specification and the testimony of REAL's experts Professors Dobson and Shasha. Contrary to MOVE's assertion (MMVI at 42), the testimony of Professors Dobson and Shasha was not that embodiments resulting in automated selection of an area having boundaries, such as clicking on a point on a map, name or zoom bar, would be "obvious," but rather, that the '989 Patent specification discloses such embodiments which were within the knowledge of persons skilled in the art and could be routinely implemented. This testimony should be considered by a jury.[23]

REAL's Professor Dobson referred to the following passage '989:col. 9, lns. 11-12 (JA-R48): "There are three basic types of variables used in the system of the present invention: (1) numerical; (2) array or menu selection; and (3) floating point location," and testified "so, there's a variety of ways that people could interact with the system to begin a selection of an area." JA-R886-87, 891-92 ("I read this to indicate that the system can use three types of variables. . . . [A]s one skilled in the art I would look at that and say, . . . I have several different tools to get a result."). He

---

[23] *Ralston Purina Co. v. Far-Mar-Co.,* 772 F.2d 1570, 1575 (Fed. Cir. 1985) (Whether the written description requirement under 35 U.S.C. §112, ¶1 is met "is a question of fact reviewable under the clearly erroneous standard."); *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1371 (Fed. Cir. 2003) ("Although enablement is a question of law, because of the factual nature of the inquiry in this case, it is amenable to resolution by the jury.")

47

further understood the reference to "menu selection" to teach a person of ordinary skill in the art the "ability to access the map through a menu." JA-R891.

Professor Dobson referred to another teaching at '989:Col. 9, lns. 27-34 (JA-R48, 891) to further explain clicking on a point on a map: "The location is selected through the use of manipulation keys or pointing devices such as a mouse, light pen or other known devices which allow positioning of a graphical interface selection in order to locate both property location on distance specifications without resort to numerical data on the part of the user." JA-R888-89, 891 ("It could be as simple as touching a map and having the map bring up the zoom area around that point."). He explained that all of these embodiments could be implemented with "basic experimentation" and that "I don't think it would be that difficult." JA-R894-99.

REAL's Professor Shasha agreed. JA-R727-28, 731-32. Moreover, he understood from this record that inventor Tornetta clearly had possession of an invention where the host computer selects a first and second area having boundaries in response to a human user clicking on a point on a map. JA-R733-733.1.

## VII. MOVE'S MOTION FOR SUMMARY JUDGMENT REGARDING WILLFUL INFRINGEMENT

### A. MOVE's Position

#### 1. Move's Defenses Preclude a Finding of Willful Infringement.

To prove willfulness, REAL "must show by clear and convincing evidence that [Move] acted despite an *objectively* high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).   The "state of mind of the accused infringer is not relevant to this objective inquiry." *Id.*; *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1382 (Fed. Cir. 2005). (objective baselessness "does not depend on the plaintiff's state of mind"). If "the accused infringer's position is susceptible to a reasonable conclusion of no infringement," the objective "prong of *Seagate* cannot be

met." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011). Unless this "threshold objective standard is satisfied," the Court cannot even consider evidence of the accused infringer's conduct. *Seagate*, 497 F.3d at 1371.

REAL's willfulness evidence mostly concerns Move's subjective state of mind, which the Court cannot consider unless REAL satisfies *Seagate*'s objective prong. *See Seagate*, 497 F. 3d at 1382.   Here, REAL cannot establish the objective prong based on the defenses discussed in Sections IV, V, and VI above and in light of two undisputed facts: (1) this Court initially agreed that the selecting steps were limited to rubberbanding; and (2) REAL stipulated to non-infringement under that construction. Given that the Court initially found REAL's non-infringement defense meritorious, REAL cannot, as a matter of law, establish objective baselessness. *See Dominant Semiconductors SDN. Bhd. V. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) ("To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits.").[24]

## B.   REAL's Position

MOVE's motion for summary judgment attempting to preclude a finding of willful infringement by a jury should be denied. The issue of willful infringement is a question of fact that should be decided by a jury, particularly in circumstances such as in this case where MOVE knew of the '989 Patent at least as early as 1998 (*see, e.g.,* JA-R1464), and took no remedial steps to avoid infringement of the patent. Instead, MOVE's internal documents and testimony of its witnesses confirm that MOVE's websites were designed to employ the "interactive mapping" of the '989 claimed inventions (*see, e.g.,* JA-R2306), and emphasized such "mapping" as a key feature of

---

[24]   REAL is not entitled to have a jury assess Move's defenses, and *i4i* does not hold otherwise.   *i4i Ltd., Partnership v. Microsoft Corp.*, 598 F.3d 831, 859-60 (Fed. Cir. 2010).   Willfullness is often decided on summary judgment.   *See., e.g., Henrob Ltd. v. Bollhoff Systemtechnik GmbH & Co.*, No. 05-CV-73214-DT, 2009 WL 3199812, * 9 (E.D. Mich., Sept. 29, 2009)

its websites to customers (*see, e.g.,* JA-R1733-48 at 7). MOVE did not take any steps to avoid infringement, only to attempt to capitalize from it.

MOVE would prefer to have a jury not consider its willful conduct in this case. Rather, MOVE contends (MMVII at 49) its defenses to infringement are reasonable and that should end the inquiry. However, the law requires that a jury be permitted to "decide for itself" whether MOVE reasonably believed there were any substantial defenses to REAL's claim of infringement. *i4i Limited Partnership v. Microsoft*, 598 F.3d 831, 860 (Fed. Cir. 2010), *aff'd,* 131 S. Ct. 2238 (2011). A jury should be entitled to assess the following unreasonable defenses taken by MOVE, which raise a genuine issue of material fact precluding summary judgment.

**Alleged Noninfringement:** MOVE's noninfringement defense rests on a flawed claim construction, and its own expert Professor Strawn disagrees with MOVE's position. *See* REAL's Opposition to MMIV.

**Alleged Anticipation:** The testimony of MOVE's patent validity experts Professors Bacastow and Guth disagrees with MOVE's position. They admitted that every alleged anticipating reference does not include at least Steps (a), (g) and (h) of '989 Claim 1. Moreover, there is no clear and convincing corroborated evidence that any of the alleged anticipating references are even prior art. *See* RMI and RMII.

**Alleged Obviousness:** MOVE relies on two primary references MIDAS V1.22 Software and PRC Multiple Listing Service and attempts to combine them with other secondary references. However, MIDAS V1.22 admittedly does not disclose at least Claim 1 Steps (a), (g) and (h), no secondary reference discloses these steps, and MIDAS V1.22 is not prior art. *See* RMI and RMII. PRC Multiple Listing Service was already considered and rejected by the USPTO. JA-R424-26. Moreover, MOVE's Professor Bacastow did not even consider REAL's Professor Dobson's opinions that there are strong objective indicia of nonobviousness of the '989 Claimed inventions. JA-R821-22.

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*    **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

1  **Alleged Failure to Meet Written Description and Enablement**
2  **Requirements:** MOVE's position that the '989 Patent specification only discloses the
3  rubberbanding method is contrary to the Federal Circuit's claim construction and
4  expert testimony. *See* REAL's Opposition to MMVI.

5  **Alleged Inequitable Conduct:** MOVE does not mention this defense in its
6  motion, which has already been labeled as "no longer relevant" by MOVE's own
7  expert in view of the stricter standard imposed on inequitable conduct allegations
8  by the Federal Circuit in *Therasense*. *See* RMIII.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*   **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
*07-CV-02185*

Dated:     October 18, 2011

**FOR MOVE, INC., NATIONAL ASSOCIATION OF REALTORS, and NATIONAL ASSOCIATION OF HOMBUILDERS.**

**/S/ -- Robin L. McGrath**

Robin L. McGrath (*pro hac vice*)
robinmcgrath@paulhastings.com
PAUL HASTINGS LLP
600 Peachtree Street, NE, Suite 2400
Atlanta, GA    30308
Telephone:   (404) 815-2220
Facsimile:   (404) 685-5220

Frank G. Smith (*pro hac vice*)
frank.smith@alston.com
Wesley C. Achey (*pro hac vice*)
wes.achey@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA    30309-3424
Telephone:   (404) 881-7000
Facsimile:   (404) 253-8420

**FOR REAL ESTATE ALLIANCE, LTD.**

**/S/ -- Louis M. Solomon**

Louis M. Solomon (*pro hac vice*)
louis.solomon@cwt.com
Tony Pezzano (*pro hac vice*)
tony.pezzano@cwt.com
Colin A. Underwood (*pro hac vice*)
colin.underwood@cwt.com
Rebekka Noll (*pro hac vice*)
rebekka.noll@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY    10281
Telephone:   (212) 504-6000
Facsimile:   (212) 504-6666

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,*      **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**/S/ -- Laura W. Brill**

Bert H. Deixler (SBN 70614)
bdeixler@kbkfirm.com
Laura W. Brill (SBN 195889)
lbrill@kbkfirm.com
KENDALL, BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA    90067
Telephone:    (310) 556-2700
Facsimile:    (310) 556-2705


**FOR REAL ESTATE ALLIANCE, LTD. and EQUIAS TECHNOLOGY DEVELOPMENT, LLC**


**/S/ -- Lawrence A Husick**

Lawrence A Husick (*pro hac vice*)
lawrence@lawhusick.com
LIPTON, WEINBERGER & HUSICK
P.O. Box 587
Southeastern, PA    19399-0587
Telephone:    (610) 296-8259
Facsimile:    (610) 296-5816

*Move, Inc. et al. v. Real Estate Alliance Ltd., et al.,* **JOINT BRIEF ON SUMMARY JUDGMENT MOTIONS**
07-CV-02185